## Case No. 7,987.

### LAFAYETTE BANK v. BANK OF ILLINOIS.

[4 McLean, 208.] 1

Circuit Court, D. Illinois.   June Term, 1847.

BANKS AND BANKING—BILLS OF EXCHANGE—CUSTOM—DUTY OF CASHIER—USURY.

1. A cashier of a bank which, by its charter, is authorized to deal in bills of exchange, may assign or accept such bills as the agent of the bank. This is the general custom of banks.

[Cited in brief in Houghton v. First Nat. Bank of Elkhorn. 26 Wis. 665.   Cited in Donnell v. Lewis Co. Sav. Bank, 80 Mo. 171.]

2. Where a bank agrees to pay the face of its bills, there can be no usury.

3. To constitute usury there must be a corrupt loan of money.

4. A purchase of notes of a bank or of individuals, at a discount, is not usury.   A bank would destroy its credit by purchasing its own bills at a discount.

At law.

Messrs. Logan, Williams, and Lincoln, for plaintiffs.
Mr. Bledsoe, for defendant.

OPINION OF THE COURT. This action was brought to recover certain bills of exchange indorsed to the plaintiff by J. H. Lee, the cashier of the State Bank of Illinois. The first bill was drawn by Reynolds and Ensminger, for three thousand dollars. payable

1 [Reported by Samuel Blatchford, Esq.]

1 [Reported by Hon. John McLean, Circuit Justice.]

four months after date, in favor of J. A. Lee, cashier, dated November 17th, 1841. The second was for two thousand dollars, and the third and fourth were each for three thousand dollars. These bills were assigned to the Lafayette Bank, for the payment of a balance due to that bank by the defendant, including a certain amount of bills which were handed over to the cashier, at the time of the indorsement. The bills were forwarded, at first, to the Lafayette Bank for collection, but they were indorsed for value received before due. At maturity the bills were not paid, and there was proof of demand, protest and notice. Mr. Ridgeley, being sworn as a witness, stated that at the time of the transaction, the bills of the State Bank were greatly depreciated, and were not worth more than fifty cents on the dollar.

The first ground of defense assumed is, that the cashier of the State Bank had no power to indorse the bills to the plaintiff. That he was a mere agent, and as such, could not make a transfer of the property in the notes. 14 Mass. 180; 17 Mass. 97; Chit. Bills, 199. It is admitted, that a mere agent can not transfer a note to a person who has notice of his agency. But in every bank, authorized to deal in bills of exchange, and there are few who are not so authorized, the cashier receives such bills, and negotiates them. This is in the scope of his agency, and it is sanctioned by universal usage—or a usage that has very few, if any, exceptions. The trade in bills of exchange, is the most profitable business of a bank, and such bills, if payable to the bank at New York, are indorsed by the cashier, whether forwarded for collection or negotiated. There is no other officer of the bank to whom this duty belongs. And the usage is sufficient to hold the bank responsible for the acts of its cashier. He is the officer who has the care of the funds of the bank, and whose acts in the performance of his duty, is binding upon the bank. But it is contended, the Lafayette Bank had no power to buy bills of exchange. In the charter of that bank, there is power given to buy bills of exchange upon banking principles. If the bank has the power, it is answered, it can not collect depreciated funds with which to purchase bills. Pothier says, money must be paid for them. Story, Bills, 43. Depreciated as the notes of the State Bank may have been, they were at least as good as the bills under consideration. But this, it is admitted, does not test the principle. The State Bank was, no doubt, desirous of sustaining its credit, and especially with banks whose confidence would be of great value to it. It would be a most singular principle on which a bank could evade its obligations, by depreciating its own notes. The Lafayette Bank, by the confidence it reposed in the State Bank, received its bills and its drafts, which greatly conduced to sustain its credit; and the bank acknowledging its obligations, received bills, and paid its indebtments on other grounds, by a transfer of these bills. Is it for a bank to say it will not pay the face of its bills in circulation; but will pay nothing more than the specie value of its bills in the market? This would afford a strong inducement to every bank, to discredit its own bills, that it might speculate on the loss of the bill holders.

But a ground still more untenable than this, if possible, is assumed, and that is, that the Lafayette Bank has, in this transaction, committed usury. Is not a loan, a corrupt loan, essential to usury? The bills were indorsed for the payment of a debt. Now suppose the bills had been purchased for one third of the amount called for on their face, would that be usury? Certainly it would not, if it was a purchase. When any subterfuge is resorted to, a purchase or anything else, as a cover to usury, it is admitted that the device does not exempt the act from usury. But, in this transaction, there is no pretense that there was any subterfuge or device, to make the thing appear in any other character than that which belonged to it. It was an open and a fair transaction. An exchange of indebtments, by balancing the one against the other. It has no analogy to the Case of Owens referred to, reported in 2 Pet. [27 U. S.] 527.

The jury were directed to find the amount of the bills and interest for the plaintiff, which they accordingly did.

LAFAYETTE BANK (McLEAN v.). See Cases Nos. 8,885–8,889.

LAFAYETTE COUNTY (KIRKBRIDE v.). See Case No. 7,840.

LAFAYETTE COUNTY (SHERRARD v.). See Case No. 12,771.

LAFAYETTE COUNTY COURT (UNITED STATES v.). See Case No. 15,549.

LAFAYETTE INS. CO. (FRENCH v.). See Case No. 5,102.

LAFAYETTE, MUNCIE & B. RY. CO. (BAYLISS v.). See Cases Nos. 1,140 and 1,141.

LAFLIN (BEAN v.). See Case No. 1,172.

LAFLIN (JOHNSON v.). See Case No. 7,393.

LAFONTAINE (UNITED STATES v.). See Case No. 15,550.

L'AFRICAINE (SOULT v.). See Case No. 13,179.

LAGOWITZ (ROEMER v.). See Case No. 11,996.

LAHENS (FIELDEN v.). See Case No. 4,773.