THE BANK OF THE STATE *v.* WHEELER.

BANKS—CASHIER—POWER OF.—The cashier of a bank is generally, by virtue of his office, entrusted with the notes, securities, and other funds of the bank, and is held out to the world, by the bank, as its general agent in the negotiation, management and disposal of them, and, *prima facie,* he must be deemed to have authority to transfer and indorse negotiable securities, held by the bank, for its use; and the purchaser thereof, in good faith, from the cashier, without notice of any special limitation of his power to transfer and indorse such paper, will acquire perfect title thereto, and the indorsement thereof, as cashier, will bind the bank.

SPECIAL FINDING—PRACTICE.—Where a judgment is rendered on a special finding of facts, and there is any evidence tending to establish the existence of the facts necessary to uphold the judgment in point of law, and there is nothing indicating any other error, mistake, or wrong, except mere error of opinion on evidence, the Supreme Court will not disturb the finding.

APPEAL from the *Porter* Circuit Court.

PERKINS, J.—*Amzi L. Wheeler* sued the *Bank of the State,* as indorser of a bill of exchange. The bank defended on the ground that the indorsement was made by the cashier, as was or might have been known to the plaintiff, for the ac-

commodation of other parties, without authority from the bank, &c. The cause was tried by the Court, who made a special finding as follows:

"The Court finds, that on the 15th day of *January*, 1861, *Luther J. Abbott* and *Ephraim A. Abbott* drew the bill of exchange, which is the foundation of this action, on *Nicholas Abbott*, and thereby requested said *Nicholas* to pay, sixty days after date, to the order of *M. Lair Harter*, at the *Park Bank*, in the city of *New York*, and State of *New York*, five thousand dollars; that said *Nicholas*, on the same day, accepted the same in writing on the bill; that said *M. Lair Harter*, on the same day, indorsed said bill in blank, and delivered it to said *Nicholas Abbott;* that the bill was dated *January* 15th, 1861.

"The Court further finds, that *H. Early* was, for a long time before and after, and at the date of said bill, the cashier of the *Plymouth Branch of the Bank of the State of Indiana*, and was, also, as was said *Nicholas Abbott*, a director in said bank; that said *Early*, as such cashier, on said 15th day of *January*, 1861, discounted said bill of exchange for, and purchased the same of, said *Abbott*, and paid him for it with the money of the bank, the purchase being made for the bank; that afterwards, on the same day, said *Early*, as such cashier, and for and on behalf of the bank, sold and indorsed said bill to the plaintiff, *Wheeler*, who then and there paid the bank the purchase-money therefor. The indorsement was to '*H. Early*, cashier,' and by '*H. Early*, cashier.'

"The Court further finds, that said bill was not discounted by the directors of said branch bank; that the said *Early* and *Nicholas Abbott* knew, when they discounted said bill, that it was against the instructions of the directors; and that, to conceal the transaction, said *Early* made false entries on the books of the bank; but the Court finds, that the plaintiff, *Wheeler*, purchased said bill, and paid for it in good faith,

and without notice that it had not been purchased by the bank, and that it had not authorized its indorsement to him; and that he had previously agreed with the cashier, *Early,* that if the bank discounted the bill, he would re-discount it, if the bank should need the money." See, as to the effect of this finding, *Bolton* v. *Howell,* 18 Ind. 181. The Court found that all the steps to charge indorsers had been duly taken.

The Court found, as a conclusion of law, upon the facts set forth, that the bank was liable to the plaintiff for the amount of the bill, costs of protest, &c., and rendered judgment accordingly. A motion for a new trial was overruled.

The *Bank of the State,* by charter, has power to deal in bills of exchange, &c., to appoint a cashier, and require him to give a bond, &c. See the charter.

In *Wild* v. *Bank of Passamoquoddy,* 3 Mason, 505, a case much like the present, Judge *Story* said: " The cashier of a bank is, *virtute officii,* generally entrusted with the notes, securities, and other funds of the bank, and is held out to the world, by the bank, as its general agent in the negotiation, management and disposal of them. *Prima facie,* therefore, he must be deemed to have authority to transfer and indorse negotiable securities, held by the bank, for its use and behalf."

In that case, the plaintiff recovered against the bank, upon an indorsement of the cashier. The case has since been followed as authority. Dunlap's Pal. Ag. p. 156; Story on Ag. sec. 114; Ang. and Am. on Corp. sec. 300; *Bank of Gennesee* v. *Patchin Bank,* 19 N. Y. Rep. 312. See, also, 17 Ind. pp. 550, 559.

And in *Story* on Promissory Notes, &c., 127, it is laid down, that an indorsement of a note to the cashier of a bank, will be deemed an indorsement to the bank, the indorsement being in this form, "to *A B,* cashier."

In the case at bar, the transactions were the purchase and sale of a bill of exchange. It does not appear, in the case, that the

The Bank of the State *v.* Wheeler.

cashier of the bank, who received and transferred the bill in question, possessed less than the ordinary power of bank cashiers. It follows that the bank was liable upon the indorsement made by the cashier, and that the judgment for the plaintiff was right, if the purchase by *Wheeler* was *bona fide.* It would certainly greatly embarrass monetary and mercantile transactions, if every man, who bought and sold gold and silver and commercial paper, at the counter of the bank, of or to the cashier, was compelled to call for the records of the bank, to see that the cashier had the powers he assumed, they being within the general scope of the authority of such officer. The directors of banks are not usually in perpetual session, while the business of banks is occurring every day, and must, of necessity, be transacted by the officers in charge, or not at all. The public interest requires that the banks should be bound by the acts of their officers in their ordinary business. See *Smith* v. *Stevenson,* 18 Ind. 327. The remaining question, then, is, does the evidence, which is of record, tend to sustain the finding of the Court below, that *Wheeler* was *bona fide* purchaser? See *Bolten* v. *Howell, supra.*

From the evidence, the Court might find, without any strained construction of it, that *L. J.* and *E. A. Abbott,* of *Troy, Ohio,* wanted money; that their father, *Nicholas Abbott,* who resided with them in *Ohio,* and who was a director in the *Branch of the Bank of the State of Indiana,* at *Plymouth, Indiana,* and a member of the discount committee, undertook to procure the money for his sons; that he had applied to *Amzi L. Wheeler,* a private banker at *Plymouth,* to discount a note for his sons; that *Wheeler* had promised to do so, if the note had certain names on it; that *Nicholas* brought to *Wheeler* a note for discount, but, it not having on it the specified names, *Wheeler* refused to do the note; that *Nicholas* then applied to the branch bank to discount the note; that

the branch was desirous to do it, and had money enough on hand for the purpose, but did not like to spare it for fear calls might be made that it ought to, but could not meet if it did; that *Wheeler* informed the officers of the bank, or some of them, that, if the bank discounted the note, he would re-discount it for the bank, if it needed the money; that the cashier of the bank, who was in the habit of discounting paper, on his own judgment, as was known to the officers of the bank, then discounted or purchased the note in suit, the teller of the bank paying for it with money of the bank, taken at the time from its vault, in the usual course of business; that *Wheeler*, directly after, purchased the note of the bank; that the bank charged *Nicholas* 127 dollars discount, and *Wheeler* charged the bank 105 dollars; that *Wheeler* acted in perfect good faith, and in ignorance of any restriction having been placed upon the power of the cashier in reference to the matter; indeed, it does not appear by the evidence that any restriction had been so placed, but only that there was "an understanding" in the bank, that discounts were to be discontinued; and, further, that the cashier expected, in his own mind, that he should be censured, in the given case, for the discount, and had false entries made, &c., of which *Wheeler* knew nothing.

The case, in one view of the evidence, is this: A person comes to town to sell, or to get discounted, a note. There are two banks in town—one has plenty of money to spare, with which to buy the note, but refuses to do so because it is not certain as to the goodness of the paper; the other is hardly able to spare the money for the purchase of the note, but is satisfied of the goodness of the paper, and is desirous to purchase it, and willing to do it if it can ascertain where it can sell the paper, and raise money, if finding itself in need. It learns that bank No. 1, in the town, will buy the paper if it is offered to it by bank No. 2, with its indorsement

on the paper.   Bank No. 2 accordingly buys the paper, and afterwards sells it to bank No. 1.   We see nothing in this but a legitimate transaction.   The evidence tends strongly to support the finding of the Court below.   It may be observed that the testimony of *Wheeler* reads more like truthful evidence than does that of *Early* or *Abbott*.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*McDonald*, *Roache & Lewis*, and *John B. Niles* and *John B. Howe*, for the appellant.[1]

*James Bradley* and *D. J. Woodward*, for the appellee.[2]

