CHARLES HARNESS, Defendant in Error, *v.* DAVIES COUNTY SAVINGS ASSOCIATION, Plaintiff in Error.

46 357
114 283

1. *Bills and notes — Presentment — Request to present again — Waiver.—* The request by the drawer, on maturity of a bill of exchange, to present it again for payment, and the promise that it shall be met, cures all informalities as to presentment and notice, and either admits or waives them.

2. *Bills and notes — Funds in hands of drawee, reasonable expectation as to — Demand and protest.—* Where the drawer of a bill of exchange has failed to place funds in the hands of the drawee to meet it, and has no reasonable expectation that it will be met, demand of payment and protest are unnecessary to hold him.

3. *Bills and notes — Presentment — Demand — Funds in hands of drawee — Consent to present bill second time, no extinguishment of bill, when.—* A., living in Davies county, was in the habit of drawing on B. at New York, without funds in the hands of the drawee, but notifying C., his correspondent at St. Louis, who arranged with B. for payment. In the case at bar, he drew on B. without notifying C. as before, and the bill was dishonored. At A.'s request the holder again sent the bill forward for collection, and it was again protested. After the first protest, C. had deposited funds with B., but had withdrawn them prior to the second presentation, and soon after, C. failed with the funds in his hands. Suit being brought by the holder against A., it was urged that on the first presentment there had been no proper notice or demand to hold the drawer, and that an unreasonable time had elapsed before the second presentment. *Held:*

1. That A., having made no provision for payment in the first instance, and hence suffering no prejudice from failure of demand and notice, and having no reasonable expectation that the bill would be paid, was liable notwithstanding the want of proper notice to and demand upon A., and that the failure to present it in a reasonable time afterward was immaterial.

2. That the consent to send the bill forward did not extinguish the original bill. It was neither an extension of the original bill for a consideration nor a payment and satisfaction.

3. That the deposit with B. was no proper provision for the bill, and that A. was responsible for the withdrawal of the fund.

*Error to Fifth District Court.*

*Hall & Oliver*, and *McFerran*, for plaintiff in error, urged among others the following point:

The plaintiff in error, by its course of business with the drawee, through the National Banking and Insurance Company of St. Louis, had reasonable cause for believing that its draft would be duly honored and paid upon presentation, and was

*entitled to notice on both the first and second presentation of said draft. (Commercial Bank v. Barksdale *et al.*, 36 Mo. 563; Edw. Notes & Bills, 451; Lilley v. Miller, 2 Nott & McCord, 257; 12 Curtis, 250, note.)

*Vories & Vories*, for defendant in error.

I. There was no necessity on the part of the holder of the bill to either put the bill in circulation or present the same for payment. The defendant had no funds in the hands of the firm upon which the bill was drawn; in fact, the defendant had never had any transactions with Kelly & Co. (12 East, 170; 4 M. & Seld. 226; Cathell v. Goodwin, 1 Harris & Gill, 468; 28 Barb. C. C. 390; 1 Pars. Notes & Bills, 451, 544, 548; Edw. Notes & Bills, 598, 606, notes, also side pages 271, 275.) The question is, had defendant prepared for the taking up of this bill, and was he injured by the non-presentation and want of notice? (Dolfus v. Frosch, 1 Denio, 367; Valk v. Simmons, 4 Mason, 113; 17 Wend. 94; 4 Hill, N. Y., 263; Little v. Phœnix Bank, 2 Hill, 425.)

II. After the bill was presented for payment, and dishonored, the defendant, with a knowledge of all the facts, promised to pay the bill, which is *prima facie* evidence of due notice. (Dorsey v. Watson, 14 Mo. 59, 399; Edw. Notes & Bills, 396–8, 423; Chit. on Bills, 326; 23 Wend. 379; Linville v. Welsh, 29 Mo. 203.)

III. There was no consideration for such assent on plaintiff's part to a second presentment, and hence his cause of action being then good against defendant, he neither waived it nor abandoned it. It was merely a nude promise to again present the bill. (1 Pars. Cont. 427–36; Wesson v. Horner, 25 Mo. 81.)

BLISS, Judge, delivered the opinion of the court.

This suit was brought upon an ordinary bill of exchange for $3,000, drawn by defendants, October 5, 1866, to the plaintiff's order, at sight, upon E. Kelley & Co., of New York city, and the plaintiff recovered judgment, which was affirmed by the District Court.

The petition sets forth the drawing and negotiating of the bill, its various transfers, its due presentation to the drawees for payment, and the protest; also, that after due notice of its dishonor, defendant's cashier requested the plaintiff again to present it, promising to provide means to meet it, but that it was again presented and payment refused. The petition charges that neither at the time the bill was drawn, nor at any time thereafter, had the defendant any funds in the hands of the drawees to meet it. The answer admits the drawing of the bill, but denies the putting it in circulation and its presentment and notice within a reasonable time; alleges that defendant requested the plaintiff again to present the same for payment, but that he failed to present it within a reasonable time thereafter. The answer denies that defendant had made no provision for meeting the bill, and sets up its arrangements in regard to it to show that it had reason to believe the bill would be paid.

It appears that the defendant had no funds in the hands of the drawees, and had no credit with them except as follows: Arrangements had been made with the National Banking and Insurance Company, of St. Louis, to procure a credit with the drawees, and said company had agreed that if defendant would notify them of each draft as drawn, they would at once procure its payment by Kelley & Co.; and it appears that defendant had been in the habit of depositing with said insurance company, of drawing upon said Kelley & Co., and of notifying the company of each draft, and that the latter company at once advised the drawees to pay the same, which drafts were uniformly paid and charged, not to defendant, but to the insurance company. When the bill in suit was sold to plaintiff, defendant's officers failed to notify the insurance company, and the result was that no credit was procured with the drawees; they had no authority to pay it, and it went to protest.

Several technical objections were raised at the trial to the proof of presentation, to the notice, etc. To these objections, even if well taken, it might be sufficient to say that the request to again present the bill, and the promise that it should be met, with knowledge of the facts as appearing both by the pleadings and evidence,

cures all those informalities and admits or waives the present-
ment and notice. (Clayton v. Phipps, 14 Mo. 399; Dorsey v.
Watson, *id.* 59.) But the court gave an elaborate instruction
in relation to the defendant's liability in consequence of not
having placed funds with the drawee to meet the bills, instructing
them upon a supposed state of facts that defendant had no
reasonable expectation that funds would be placed there for that
purpose.

The general doctrine, that when the drawer of a bill has failed
to provide funds to meet it, and has no reasonable expectation
that it will be met, demand of payment and notice are unneces-
sary, is universally received, and we have only to consider whether,
under the state of facts developed by the record, they were required
in this case; and to arrive at a conclusion, we should first con-
sider the grounds upon which the exception to the rule requiring
demand and notice is based, and, second, the various recognized
modifications of the exception.

The chief reason given for excusing demand and notice, where
there is no fund to draw on, is the fact that the drawer is not
prejudiced by their omission. Ordinarily he is supposed to have
recourse upon the drawee, upon dishonor of the bill, for the
reason that he is supposed to have placed funds in his hands to
meet it; and reasonable presentation and demand and prompt
notice are required in order to enable him at once to recover
back the fund so placed. We must treat defendant's St. Louis
correspondent as its agent — though somewhat more than agent
— for whose acts no one else is responsible; and it can not be
said that by making deposits with such agent, the bill had been
provided for. No funds had been placed in the hands of the
drawees, and no credit had been obtained for such a bill as this;
and when it was returned, the defendant had no resource, and
nothing was lost. In the language of Lord Denman, in Terry v.
Parker, 6 Ad. & El. 502: "If the bill were presented and paid
by the drawee, the drawer would become indebted to him in the
amount, instead of being indebted to the holder of the bill, and
would be in no way benefited by such presentment and payment."

The modifications to the exception to the rule requiring demand

are given in Dickens v. Beal, 10 Pet. 577, and the court holds that notice is still required "if the drawer has made, or is making, a consignment to the drawee, and draws before the consignment comes to hand (12 E. 43); if the goods are *in transitu*, but the bill of lading is omitted to be sent to the consignee, or the goods are lost (16 E. 43); if the drawer has any funds or property in the hands of the drawee, or there is a fluctuating balance between them in the course of their transactions (15 E. 221); or a reasonable expectation that the bill would be paid (4 M. & S. 229, 230); or if the drawer has been in the habit of accepting the bills of the drawee without regard to the state of their accounts, this would be deemed equivalent to effects (12 E. 175); or if there was a running account between them (15 E. 221)."

The relations of the drawer and drawees of the bill in controversy do not come within either of those modifications, There was no account between them; the drawer had no such credit as could provide for the bill, and its officers knew it could have it only as procured through its St. Louis correspondent, upon notice; they could have no reasonable expectation that such credit would be procured without notice, and its omission was a negligence that operated equally injuriously upon the plaintiff as though, in the sale of the bill, they had committed an actual fraud. It is unnecessary to say what might have been the reasonable expectation of the drawer if its St. Louis correspondent were alone in fault. But the fault was that of the defendant, in failing to take the essential step provided for, for the St. Louis company could not act without the notice.

The record further shows that after the protest and return of the bill defendant's cashier expressed his regret that it had not been provided for, and requested the holder's agent to again send it forward, promising that funds should be provided to meet it when presented. It was, therefore, sent to the holder in Ohio, and, through the channel in which it had formerly passed, it was again presented to Kelly & Co., and again protested. In the meantime the National Banking and Insurance Company, of St. Louis, had provided the fund to meet it, which remained a few

weeks with the drawees, but it was drawn out by this St. Louis company before the presentation of the bill; and soon after, this company failed with funds of defendant in its hands, most of which are lost. Counsel for defendant claim that there was an unreasonable delay in the second presentation of the bill; that, had it been presented promptly, it would have been paid, and hence that defendant is exonerated from liability. But they can not complain of the action of the court, although the plaintiff might have done so. The jury were directed, in substance, to regard the agreement to present the bill a second time as a good defense, and were told that it should have been presented within a reasonable time. Were we to regard this second presentation in the light of a new bill, and the action of the parties as coming within the requirements of the law merchant, perhaps the instruction was not sufficiently definite as to what would have been reasonable time. So some of the instructions asked and refused might have presented correct propositions of law — we care not to inquire. But these things should not avail the defendant, because the undoubted facts create, as matter of law, a liability on its part. After its indebtedness had become fixed and absolute, the consent to send the bill forward a second time did not extinguish it, nor is there any intimation that the parties so intended. It was neither an extension for a consideration nor a payment or satisfaction. Had the fund to meet the bill been placed and kept in the hands of the drawee, and been lost in consequence of an unreasonable·delay in calling for it, it might perhaps be said that if the plaintiff let the matter run an improper period, he took the risk of the solvency of the house where he agreed to take his pay. But the drawer never placed any funds in New York to meet the debt, but trusted the matter to its St. Louis agent, and that agent withdrew the fund before it was called for. The loss which it is said the defendant has suffered was from the misconduct of its own agent — no party to the bill, and wholly unknown to the plaintiff. It would be altogether wrong to charge the plaintiff with such loss.

The other judges concurring, the judgment will be affirmed.