PHILIP RINGLING, Respondent, v. DAVID KOHN ET AL., Appellants.

December 17, 1878.

1. Where general banking powers are conferred by the charter of a banking corporation, the corporation may borrow money without having more specific authority therefor.

2. In order to show a cashier's authority to borrow money for his bank, it is not necessary to prove a power specially conferred upon him by the board of directors, or a distinct ratification by them of the act after its consummation; his acts done in the ordinary course of the business actually confided to him as such cashier are *primâ facie* evidence that they fell within the scope of his duty.

APPEAL from St. Louis Circuit Court.

*Reversed, and judgment.*

NAT. MYERS, with whom are GLOVER & SHEPLEY, for appellants: Banks have power to borrow money, and to do every thing that is ordinarily done to secure its repayment. — *Curtis* v. *Leavitt*, 15 N. Y. 50; *Barnes* v. *Bank*, 19 N. Y. 152; *Leggett* v. *Banking Co.*, 1 Saxt. 541. And a cashier has, *ex officio*, power to borrow money. — *Ballston Spa Bank* v. *Marine Bank*, 16 Wis. 120; *Sturges* v. *Bank*, 11 Ohio St. 153; *City Bank* v. *Perkins*, 4 Bosw. 420; *Lafayette Bank* v. *State Bank*, 4 McLean, 208; *Kimball* v. *Cleveland*, 4 Mich. 606; *Crockett* v. *Young*, 1 Smed. & M. 241; *Bank* v. *Warren*, 7 Hill, 91; *Bank* v. *Wheeler*, 21 Ind. 90; *Robb* v. *Bank*, 41 Barb. 586; *Fleckner* v.

*Bank*, 8 Wheat. 347; Story on Ag., sect. 114; Whart. on Ag., sect. 684 *et seq.; Blair* v. *Bank*, 10 Ch. Leg. N. 84; *Wild* v. *Bank*, 3 Mason, 505; *Merchants' Bank* v. *Bank*, 10 Wall. 604.

A. M. GARDNER and FISHER & ROWELL, for respondent: A bank cashier has no power, by virtue of his office, to borrow money and give the bank's note, and pledge its property to secure the payment of the note. — *Daviess, etc.,* v. *Sailor*, 63 Mo. 24; *United States* v. *Bank*, 62 U. S. 360; *Bank* v. *Haskell*, 51 N. H. 116; *Bank* v. *Hamlin*, 14 Mass. 180; *Bank* v. *Barry*, 17 Mass. 97; *Leggett* v. *Banking Co.*, 1 N. J. Eq. 551; *Talmage* v. *Pell*, 7 N. Y. 346; *Bank* v. *Dana*, 31 U. S. 59; *Bank* v. *Jones*, 33 U. S. 116; *Bank* v. *Bank*, 1 Am. L. Reg. (N. S.) 636; *Hoyt* v. *Thompson*, 5 N. Y. 333; *Merchants' Bank* v. *Bank*, 77 U. S. 604.

LEWIS, P. J., delivered the opinion of the court.

This case is here for the second time. The facts out of which the litigation arose are fully set forth in the opinion delivered on the former appeal. 2 Mo. App. 159. A second trial in the Circuit Court has resulted, as before, in favor of the plaintiff.

Two new questions are raised in the present record: 1. Had the People's Savings Institution authority, under its charter, to borrow money? 2. Had Wuerpel, the cashier, authority to borrow the $10,000 from defendants, and to give them the note of the institution, with the collateral securities, for the repayment?

The first question was answered by the Circuit Court in the affirmative; and as that ruling was in favor of the defendants, who appeal, there is properly nothing in that connection for our review. But the plaintiff undertakes to show that, notwithstanding any error, the verdict was for the right party, and ought not to be disturbed because the court erred in that conclusion. He maintains that the People's Savings Institution had no charter power to borrow

money, and hence the defence set up in this cause could never be sustained in any event.

The charter gave to the corporation general banking powers, in terms such as are usually employed for that purpose. Sess. Acts 1857, p. 642, sect. 6. Nothing is said about borrowing money. But it is elementary law that a corporation may exercise any unforbidden power which is necessary to carry into effect the powers specially granted. It would be a strange limitation of the authority to purchase exchanges, or to loan money, which should deny a simple means of obtaining occasional supplies for the purpose. A specific authority to borrow money rarely, if ever, appears in any bank charter. It has always been esteemed a necessary and inherent privilege, inseparable from the exercise of banking functions. Without it no bank, however ample its assets, could at times avoid insolvency. *Curtis* v. *Leavitt*, 15 N. Y. 9.

As to the second question, the court below adopted the theory that, in order to show Wuerpel's authority to borrow from defendants for the bank, it was necessary to prove a power specially conferred upon him by the board of directors, or a distinct ratification by them of the act after its consummation. All the instructions given virtually made such a special authority or subsequent ratification essential to the defence. The following, among others asked for by the defendants, was refused : —

" The defendants move the court to instruct the jury that if they find, from the evidence in the cause, that Wuerpel was cashier of the People's Savings Institution and so held out to the public by it at the time of said loan and pledge of the bonds in controversy, and the defendants, Kohn & Co., had no knowledge of any want of power in him, at the time, to make the same, the jury must consider them valid transactions, and binding on the institution and the plaintiff, if at the time thereof defendants had no knowledge of plaintiff's interest in the bonds."

This instruction should have been given. It declared the legal effect of Wuerpel's transactions in relation to the corporation, in accordance with the rules laid down by the highest judicial authority.

It was in testimony, and not contradicted, that for one or more years before the transactions here under consideration the whole business of the bank was carried on exclusively by the cashier, Wuerpel. The other officers scarcely ever interfered, or even knew much of what was going on. Wuerpel placed in New York securities to large amounts to meet drafts, made loans and transfers of every description, and, in effect, as was testified by one of the directors, " ran the bank." The case closely resembles some of the features in *The City Bank* v. *Perkins*, 4 Bosw. 420, where the court said : " McMillen, as such cashier, had authority to borrow money for the Bank of Akron. To what extent he borrowed for the bank, the evidence does not disclose. He had practically the whole management of the business of that bank. Its board of directors met semi-annually, but, according to the evidence before us, did not at those meetings, or at other times, inquire as to the details of its business, the mode of its operations, or into the manner in which the cashier was prosecuting its business." This description, according to the testimony of some of the witnesses in the present case, would fairly have fitted the business methods of the People's Savings Institution under Wuerpel's management.

The opinion we are quoting from proceeds thus : " Under such circumstances, we think the plaintiffs are entitled to have this controversy determined upon the principle that, as between them and the Bank of Akron, the cashier of the latter was fully authorized to borrow money for it and in its name ; and that any loan made by the plaintiffs, in good faith, on an application of the cashier of the Akron bank, as such cashier, to borrow for it, is a loan to that bank ; and that such bank is primarily liable for such loan, as the party borrowing."

In *Barnes* v. *Ontario Bank*, 19 N. Y. 156, the court said : "That the power to borrow existed was determined by this court in the case of *Curtis* v. *Leavitt*. That the cashier, in virtue of his general employment, could exercise the power was not denied upon the argument, and the proposition does not admit of a reasonable doubt."

Said Story, J., in *Fleckner* v. *United States Bank*, 8 Wheat. 357 : " The acts of the cashier, done in the ordinary course of the business actually confided to such an officer, may well be deemed *primâ facie* evidence that they fell within the scope of his duty."

The cases are numerous in which it is held that the cashier of a bank may, by virtue of the general nature of his employment, transfer to. outside parties any of the notes, bills, or other securities belonging to the bank, and the transferees need look no further for his authority so to do than to the fact of his being the cashier. *Kimball* v. *Cleveland*, 4 Mich. 606 ; *Lafayette Bank* v. *State Bank*, 4 McLean, 208 ; *Bank* v. *Wheeler*, 21 Ind. 90 ; *Robb* v. *Ross County Bank*, 41 Barb. 586 ; *Wild* v. *Bank*, 3 Mason, 505. Surely these acts imply a far higher degree of authority than does that of borrowing. In the first case, the bank parts with its property ; in the second, where, as in the case before us, the borrowed money actually goes into the vault, there is a present swelling of the assets. We find no judicial authority for the proposition that when a cashier borrows for his bank, the lender will be imperilled unless a special power has been given. The case will be different, of course, if it appear that the lender has notice that the cashier is acting contrary to orders. The authorities presented for the plaintiff, relating to the general law of corporation agencies, have no application here. The powers delegated by implication to a cashier, like those exercised by the master of a ship, are exceptional. This results from the universal necessities of commerce.

The plaintiff's counsel courteously asks us to review our

former rulings in this case concerning the validity of Wuerpel's pledge of the bonds to the defendants and the effects of his fraud in getting them back. We do not find that the reasoning of counsel at all meets the argument, or the authorities presented in our former opinion, and find ourselves constrained to adhere to the views therein expressed.

The cause has undergone two trials in the Circuit Court, and two reëxaminations here. It cannot be doubted that the whole strength of the plaintiff's case has been made to appear. With the concurrence of the other judges, the judgment of the Circuit Court will be reversed, and final judgment will be here entered for the defendants.