DONNELL *et al., Appellants,* v. THE LEWIS COUNTY SAVINGS BANK.

1. **Banking Corporation**: POWER TO BORROW MONEY : CASHIER'S AUTHORITY. Where general banking powers are conferred by the charter of a banking corporation, the corporation may borrow money without having more specific authority therefor.

   In order to show a cashier's authority to borrow money for his bank, it is not necessary to prove a power specially conferred upon him by the board of directors or a distinct ratification by them of the act after its consummation ; his acts done in the ordinary course of the business actually confided to him as such cashier, are *prima facie* evidence that they fall within the scope of his duty.

2. **Promissory Notes.** Where defendant's name appeared on a note in suit as indorser, but it was clearly shown that he was really the borrower of the money for which the note was given; *Held,* that an instruction which assumed that he was an accommodation indorser was error.

3. ———— : NOTICE OF DISHONOR : ASSIGNMENT FOR CREDITORS : NON-RESIDENT CREDITOR. A bank of this State bound as indorser of a note payable in New York and held there, failed and made an assignment for the benefit of creditors. The note not being paid at maturity, the holder caused it to be protested and notice to be given to the bank, but not having heard of the failure and assignment, gave no notice to the assignee. *Held,* that the notice given was sufficient to bind the bank.

4. ———— : ————. If one, whose name appears on a note as indorser, is really the maker, it is his duty to provide for its payment, and if he fails to do so, and the note goes to protest, he is not entitled to notice.

5. ———— : CORPORATION. If a bank borrows money and gives its note therefor, the fact that its officers may have misapplied the money cannot defeat the holder's right to recover.

*Appeal from Lewis Circuit Court.*—HON. JOHN C. ANDERSON, Judge.

REVERSED.

*Hagerman, McCrary & Hagerman* for appellants.

*David Wagner* for respondent.

RAY, J.—This is a proceeding originally commenced before the assignee of the Lewis County Savings Bank for the adjustment and allowance of a claim in favor of plaintiffs—Donnell, Lawson & Co.—predicated upon a negotiable promissory note, of which the following is a copy:

"$4,000.        CANTON, Mo. February 15th, 1877. Ninety days after date I promise to pay to the order of Lewis County Savings Bank $4,000 at the banking house of Donnell, Lawson & Co., New York City; value received.

                                     H. DAVIS.

Indorsed : Pay Donnell, Lawson & Co., or order.
                     LEWIS COUNTY SAVINGS BANK,
                           Per S. H. STUART, President."

The assignee disallowed the claim, from which decision Donnell, Lawson & Co. appealed to the circuit court, where upon a trial anew before the court, a jury having been waived, a finding and judgment was again had and rendered against the plaintiffs, from which they have appealed to this court

The record shows that the Lewis County Savings Bank was a banking corporation organized and doing business as such at Canton, Missouri, under and by virtue of the General Statutes of Missouri, (1 Wag Stat., 329) ; that it commenced business in 1867, and continued until March 31st, 1877, when it suspended, and on April 7th, 1877, made a voluntary assignment in trust for its creditors; and that thereafter the assignee had charge of its effects under said assignment and the statute governing the same. 1 Wag. Stat., 150, 154. The record also shows that the plaintiffs at the same time were bankers in the City of New York, and the correspondents of the Lewis County Savings Bank in that city, upon whom said savings bank drew its drafts for eastern exchange, and to whom remittances were made to meet the same.

The record further shows that while said savings bank

was thus engaged in the banking business, to-wit, on November 7th, 1876, by its cashier, H. Davis, it addressed to plaintiffs, at New York, a letter to the following effect:

"We are furnishing our pork-packer here money on paper with margin put up to the amount of sixty cents on the dollar, and then when invested and cut we hold the entire product covered by insurance. With such paper as collateral could you discount our paper, from $5,000 to $20,000, at ninety days, and what at? Answer at once."

To which the plaintiffs, on November 13th, 1876, replied as follows:

We will let you have $5,000 for ninety days, and beg to inclose herein a bank note, which you will please fill and forward to us for discount. This is the very best we can do at present, as the demand has been very general on us from our friends both west and south. Please have the note made by some private party and indorsed by the bank."

In response to this letter on the 18th day of November, 1876, the savings bank, by its cashier, H. Davis, forwarded to plaintiffs at New York a negotiable promissory note for $5,000, at ninety days, made by its cashier, H. Davis, to said Lewis County Savings Bank, and indorsed to plaintiffs by said bank, by its president, S. H. Stuart. This note the plaintiffs discounted, and placed the proceeds to the credit of the Lewis County Savings Bank on its books; and subsequently such proceeds were checked out by said savings bank, and monthly statements of account were furnished said savings bank by plaintiffs. Afterward the said savings bank paid on said note $1,000, and on February 15th, 1877, the note in controversy was given in renewal of the balance thereof and indorsed to plaintiffs by said savings bank, by its president, S. H. Stuart, as aforesaid. This renewal note was also discounted by plaintiffs, and the proceeds thereof placed to the credit of the savings bank on the books of the plaintiffs, and afterward checked out by defendant before its suspension. On the maturity of this renewal note, to-wit, on the 19th day of May, 1877, the

same was duly presented for payment, duly protested and notice thereof duly sent to the said Lewis County Savings Bank at Canton, Missouri. There is no evidence whatever showing or tending to show that plaintiffs, at or before the date of said protest and notice, had any notice of the prior assignment of said savings bank in trust for its creditors, as aforesaid. It further appears that said Stuart and Davis were the president and cashier of said savings bank, and that when, in the usual course of business, it became necessary to make indorsements, said president and cashier always indorsed the notes or drafts; that sometimes Stuart indorsed as president, and sometimes Davis as cashier; that prior to the indorsement of the note in question each of said officers had indorsed drafts to plaintiffs as such officers, and that plaintiffs and defendant, prior thereto, had a great many dealings with each other as such banks. It also appears that Davis, the cashier of said savings bank, on November 18th, 1876, was, on account of said $5,000 note first made as aforesaid, credited on his account on the books of said savings bank with $5,000, which he drew out from time to time before the suspension and assignment of the said savings bank, except $1,000; but it does not appear that the plaintiffs had any knowledge whatever of this arrangement of the officers of said savings bank, by which such credit, use or misapplication of the funds of said savings bank were made.

The 1st section of the 6th article of chapter 37, regulating "Savings Banks and Fund Companies," (Wag. Stat., 329,) which may be regarded as the charter of the Lewis County Savings Bank, is as follows: "Any five or more persons, in any county in this State, may organize themselves into a savings association, and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor, and of buying and selling exchange, gold, silver, coin, bullion, uncurrent money, bonds of the United States, of the State of Missouri and of the city and county

in which any association shall be organized, of loaning money on real estate and personal security, at a rate of interest not to exceed ten per cent per annum, and of discounting negotiable notes and notes not negotiable, and on all loans made may keep and receive the interest in advance."

At the close of the testimony the court refused the following declaration of law asked by the plaintiffs, to-wit:

1. If the court, sitting as a jury, believes that Donnell, Lawson & Co. discounted and paid for the note of H. Davis for $5,000, dated November 18th, 1876, to the Lewis County Savings Bank on the indorsement of said bank by the authorized officers, and the Lewis County Savings Bank received the money and used it for its banking purposes, and at the maturity of said note paid $1,000 thereon, and Davis gave to said bank the renewal note in evidence for balance of said original note, which was indorsed to plaintiffs by said bank by its authorized officers and agents, and that said note was protested at the maturity thereof, plaintiffs should recover."

The following declarations were given by the court at the instance of defendant, to-wit:

1. That the bank, by its officers, had no right or power to borrow money, and no action can be maintained on such contract of borrowing.

2. That the bank cannot be held liable as indorser on the note sued on; that the president of a bank is not, by reason of his official position, presumed to have the power to bind it as an accommodation indorser of the note of an individual, and a payee who fails to prove that the president or officer had authority to make the indorsement, cannot recover against the bank.

3. If the court, sitting as a jury, find from the evidence that the bank closed its business on the 7th day of April, 1877, and made an assignment on that day, and that the assignee at that time took charge of its assets and was from thenceforth manager of its business, and that on the

19th day of May, 1877, the notary public, at the request of plaintiffs, mailed at New York City a notice of protest for non-payment of the note in controversy to S. H. Stuart, president, and no notice was sent to the assignee, then such notice was not sufficient to bind the bank as indorser, and the verdict should be for the defendant.

Exceptions were duly saved to these rulings of the court, and the same, together with the judgment thereon, are here assigned for error by the plaintiffs. The questions arising on this record, as indicated by the declarations of law given for the defendant, it will be seen, are three : 1st, Whether the Lewis County Savings Bank, under the general statute aforesaid, had power to borrow money. 2nd, Whether its president, as such, had authority to indorse its notes or drafts. 3rd, Whether the protest and notice of the note in question given to the Lewis County Savings Bank after its assignment, and while the assignee as such had charge of its affairs, but before the plaintiffs had any notice of said assignment, are sufficient to bind the defendant.

The two first of these questions may be taken and considered together, and both of them, as shown by the au-

1. BANKING CORPO-RATION: power to borrow money: cashier's authority.

thorities, have been expressly decided against the position taken by the defendant and held by the court below in its said instructions. In the case of *Ringling v. Kohn*, 6 Mo. App. 333, the St. Louis court of appeals had occasion to construe the 6th section of the act incorporating the " Peoples Savings Institution," (Sess. Acts 1857, p. 642,) which is substantially the same as the 1st section of the general statute above quoted, and under which the Lewis County Savings Bank was organized as aforesaid. The court there held, 1st, that : " Where general banking powers are conferred by the charter of a banking corporation, the corporation may borrow money without having more specific authority therefor. 2. In order to show a cashier's authority to borrow money for his bank, it is not necessary to prove a

power specially conferred upon him by the board of directors, or a distinct ratification by them of the act after its consummation; his acts done in the ordinary course of the business actually confided to him as such cashier, are *prima facie* evidence that they fall within the scope of his duty." These positions are well supported by the numerous authorities cited and relied on by the court of appeals in its well considered opinion in said case, and we think state the law correctly, when applied to the facts in this case, as well as to that. *Curtis v. Leavitt,* 15 N. Y. 9; *The City Bank v. Perkins,* 4 Bosw. 420; *Barnes v. Ontario Bank,* 19 N. Y. 156; *Fleckner v. United States Bank,* 8 Wheat. 357; *Kimball v. Cleveland,* 4 Mich. 606; *Lafayette Bank v. State Bank,* 4 McLean 208; *Bank v. Wheeler,* 21 Ind. 90; *Robb v. Ross Co. Bank,* 41 Barb. 586, and *Wild v. Bank,* 3 Mason 505.

The second instruction for the defendant is further objectionable in that it assumes that the Lewis County Savings Bank was an accommodation indorser of the note in question. Such was not the fact. The real transaction between the parties, as clearly shown by the evidence, was a borrowing of money by the defendant from the plaintiffs, and while the transaction assumed the form of a negotiable promissory note, on which the savings bank appeared as indorser, it was in reality the maker of the note, much less an accommodation indorser. and got the proceeds realized thereby.

2. PROMISSORY NOTES.

The third and last question has reference to the sufficiency of the notice to bind the defendant. The third instruction given for the defendant in this behalf, under the facts of the case, is clearly not the law. At the time of the protest plaintiffs neither knew nor had any reason to know of the assignment. There is no pretense that they were ever notified, and upon no principle of law can they be bound thereby. *Bank v. Reynolds,* 2 Cranch C. C. 289. They were residents of New York City, where the note was payable, and the assignment was made in Missouri, and under

3. ———: notice of dishonor: assignment for creditors: non-resident creditor.

the insolvent laws of this State, and hence could have no effect on foreign creditors. It has been settled by a long line of decisions that the State insolvent laws can only affect its own citizens and foreign creditors who have submitted to their jurisdiction. *Baldwin v. Hale*, 1 Wall. 223; *Ogden v. Saunders*, 12 Wheat. 279. At the time the note became due plaintiffs were not parties to the proceedings, and as far as the evidence shows had no knowledge of the assignment. It was then their right became absolute. As to this transaction they knew no one but the Lewis County Savings Bank. Such was the name of the indorser, if the defendant is to be treated as such; its liability was finally fixed; and the notice in question was sufficient.

On the other hand, if the savings bank is to be treated as the borrower of the money and the real maker of the note, as the evidence clearly shows it to have been, then as such maker it was its duty to have furnished and kept on hand at the place of payment funds sufficient to have paid the same, or otherwise have provided therefor at its maturity; and this the evidence shows it failed and neglected to do, and in such cases all the authorities agree that no notice is necessary to bind the maker. *Merchants Bank v. Easley*, 44 Mo. 286; *Harness v. Davies County Savings Bank*, 46 Mo. 357; Daniel Neg. Inst., (1 Ed.) 1074.

If the savings bank was the real borrower of the money, as is conceded, or at least clearly shown, then the fact that its officers may have used or misplaced the funds cannot defeat the plaintiffs' right of recovery, as in such case they were not bound to follow the money to see that it was applied to corporate purposes. *Thompson v. Lambert*, 44 Iowa 242; *Mills v. Gleason*, 11 Wis. 470; *Merchants Bank v. State Bank*, 10 Wall. 604; *Lexington v. Butler*, 14 Wall. 282; *Ringling v. Kohn*, 6 Mo. App. 333.

For these reasons the judgment of the circuit court is reversed and the cause remanded, to be proceeded with in conformity to this opinion. All concur.