CONTINENTAL NATIONAL BANK OF CHICAGO, Appellant, v. ANDREW J. FARRIS et al., Respondents.

Kansas City Court of Appeals, December 5, 1898.

1. **Banks and Banking**: AUTHORITY OF CASHIER TO BORROW: FRAUD AND DECEIT: FABRICATED CERTIFICATE. SMITH, P. J., dissenting. A cashier of a bank has authority to borrow money and execute the bank's note therefor and pledge its assets for the payment of the same without having specifically conferred upon him by the board of directors the power so to do; and where he borrows money and uses the same in the business of the bank, an action for deceit will not lie against the president who signed a fabricated certificate that the board had conferred special power to make the loan.

2. ——: ——: ——: ——: RIGHT TO CONTRACT. ELLISON, J., with GILL, J., concurring. The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon that point the judgment of the individual is subject to that of no other tribunal; and a corporation loaning money to a bank has the right to require the knowledge and approval of its board of directors, and the officers fabricating a certificate of such approval will be liable in an action for fraud and deceit for the fabrication.

*Appeal from the Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

LAVELOCK & KIRKPATRICK and F. P. DIVELBISS for appellant.

(1) The cashier of a bank has no authority to borrow money for his bank, execute its note therefor, and pledge the notes and assets of the bank as collateral security for the same, without the consent of the board of directors of the bank. R. S. 1889, secs. 2748, 2759; 1 Morawetz on Priv. Corp. [2 Ed.], sec. 540; Bank v. Hughes, 62 Mo. App. 576; Bank v. Sailor, 63 Mo. 24; Ringling v. Kohn, 6 Mo. App. 333; Fleckner v. Bank, 8 Wheat. (U. S.) 338; Bank v. Armstrong, 152 U. S. 346; s. c., 38 L. Ed. 470. (2) An action for fraud and deceit will lie in favor of one who has been misled to his injury by the false representations of another made concerning matters about which it was the duty of the latter to be informed. Bisham's Equity [4 Ed.], secs. 214, 215, 216, 217; 1 Beach on Mod. Eq., sec. 68; Bigelow on Fraud, secs. 509, 516; Dunn v. Oldham, 63 Mo. 181; Dulaney v. Rogers, 64 Mo. 201; Raley v. Williams, 73 Mo. 310; Cottrell v. Krum, 100 Mo. 397; Hamlin v. Abell, 120 Mo. 188; Prewitt v. Trimble, 92 Ky. 176; s. c., 36 Am. St. Rep. 586. (3) If the representations were made by one who

ought to have known the facts, and another relying on such representations as true was induced to enter in a contract which he would not have made but for such representations, and suffers loss therefrom, the law imputes knowledge to the party making such statements, and if they were untrue then they were fraudulent as regards the party relying on them. Dunn v. Oldham, 63 Mo. 181; Caldwell v. Henry, 76 Mo. 254; Walsh v. Morse, 80 Mo. 568; Hamlin v. Abell, 120 Mo. 188; Furnace Co. v. Moffatt, 147 Mass. 403; s. c., 9 Am. St. Rep. 727; Bullitt v. Farrar, 42 Minn. 8; s. c., 18 Am. St. Rep. 485; Prewitt v. Trimble, 92 Ky. 176; 36 Am. St. Rep. 586; Rothschild v. Mack, 21 N. E. Rep. (N. Y.) 726; Johnson v. Gullick, 46 Neb. 817; 50 Am. St. Rep. 629; Shippen v. Bowen, 122 U. S. 575. (4) A false statement made by the president and cashier of a bank, concerning the business or property of their bank, which misleads another to his injury, will be sufficient to support an action for damages based on fraud and deceit. Clark v. Edgar, 84 Mo. 106; Cole v. Cassidy, 138 Mass. 437; s. c., 52 Am. Rep. 284; Brackitt v. Griswold, 112 N. Y. 454. (5) It makes no difference whether such representations were made knowingly or innocently, if they were untrue, and the other party being ignorant of the facts relied on them, and was induced thereby to enter into a contract from which loss resulted, then an action for fraud and deceit may be maintained. Dulaney v. Rogers, 64 Mo. 204; Caldwell v. Henry, 76 Mo. 260; Walsh v. Morse, 80 Mo. 573; Hamlin v. Abell, 129 Mo. 201; Ring v. Glass Co., 44 Mo. App. 113; Bullitt v. Farrar, 42 Minn. 8; s. c., 18 Am. St. Rep. 485; Cottrill v. Krum, 100 Mo. 397; Prewitt v. Trimble, 92 Ky. 176; s. c., 36 Am. St. Rep. 591; Johnson v. Gullick, 46 Neb. 817; s. c., 50 Am. St. Rep. 629; Shippen v. Bowen, 122 U. S. 575. (6) It is not necessary that

the false representations should have been the sole inducement to the contract; if they had a substantial effect in inducing the loan plaintiff may recover. Cahn v. Reid & Bungardt, 18 Mo. App. 115; Saunders v. McClintock, 46 Mo. App. 216; Jordan v. Pickett, 78 Ala. 331; Winter v. Bandel, 30 Ark. 362; Hall v. Philbrick, 47 Iowa, 217; Fishback v. Miller, 15 Nev. 428; Lebby v. Ahrens, 26 S. C. 275.

J. L. Farris & Son for respondents.

(1) The cashier has authority to borrow money in the ordinary course of the daily business of the bank, and may bind the bank by a promissory note executed therefor. Bank v. Bank, 16 Wis. 120; Sturgis v. Bank, 11 Ohio St. 153; Barnes v. Bank, 19 N. Y. 152; Ringling v. Kohn, 6 Mo. App. 333; Donnell v. Bank, 80 Mo. 165. (2) And to draw checks or drafts upon the funds of the bank deposited elsewhere. Bank v. Bank, 5 Wheat. (U. S.) 326; United States v. Bank, How. (U. S.) 306; Bank v. Kohner, 8 Daily (N. Y.), 534; Bank v. Johnston, 5 Coldw. (Tenn.) 88.

SMITH, P. J. (*dissenting*).—This is an action which was brought to recover damages for deceit.

The Farmers Bank of Orrick, a savings bank organized under the statute of this state, on the twenty-fifth day of May, 1895, through its cashier, STATEMENT. L. P. Parish, by letter requested of the plaintiff bank, a national bank doing business at Chicago, in the state of Illinois, a loan of $1,500 for sixty days. The plaintiff bank, through its vice-president, by letter of date May 27, 1895, informed the said Parish, cashier of the said Farmers Bank, that it would make to the latter bank the loan requested if the board of directors of such latter bank

would adopt a resolution specially authorizing its cashier to borrow the sum requested; and to execute its note therefor, and to pledge the bank's notes as collateral to secure the payment of the same. On receipt of this letter of the plaintiff bank the cashier of the Farmers Bank replied thereto, inclosing a copy of a resolution purporting to have been adopted by its board of directors conferring on its cashier the required authority. This certificate was signed by the said Parish, as cashier, and defendant Farris, as president, with the corporate seal of the bank thereto affixed. There was also inclosed the note of the Farmers Bank for the amount of the loan, with certain collateral notes to secure the payment of the same.

The plaintiff bank, on receipt of these papers, entered to the credit of the Farmers Bank on its books the sum of $1,500, the proceeds of the note, less the interest thereon. Subsequently this amount was, in the regular and usual course of business, paid out by the plaintiff bank on the drafts of the cashier of the Farmers Bank. The board of directors of the Farmers Bank did not adopt the said resolution. It was fabricated by the cashier of the Farmers Bank for the purpose of securing the loan requested. The makers of the collateral notes pledged to secure the payment of the loans were insolvent. It was admitted that the plaintiff relied on the truth of the facts recited in the fabricated certificate and was induced thereby to make the loan. It appears that the defendant Farris signed the certificate with some other papers at the request of the cashier Parish in utter ignorance of the fact that he was doing so. Before the maturity of the said note the Farmers Bank failed and went into the hands of a receiver. The note has never been paid. There was a special finding of facts by the trial court, which were to the effect: *First*, that the defendant Farris

signed the certificate to the purported resolution of the board of directors; and, *second*, that the money loaned by plaintiff to the Farmers Bank, through its cashier, was drawn out in the usual course of business of the latter. The judgment was for defendants and the plaintiff appealed.

The Farmers Bank was organized under article VII, chapter 42, Revised Statutes 1889. The provisions of sections 2743 and 2745 of the above chapter are similar to those of the sixth section of the act under which the People's Savings Institution was incorporated. Sess. Acts 1857, p. 642.

This last section was construed by the St. Louis court of appeals in Ringling v. Kohn, 6 Mo. App. 333,

BANKS and banking; authority of cashier to borrow; fraud and deceit: fabricated certificate.

and where it was said: *First.* "Where general banking powers are conferred by the charter of a banking corporation, the corporation may borrow money without having more specific authority therefor."

*Second.* "In order to show a cashier's authority to borrow money for his bank, it is not necessary to prove a power specially conferred upon him by the board of directors, or a distinct ratification by them of the act after its consummation; his acts done in the ordinary course of the business actually confided to him as such cashier are *prima facie* evidences that they fall within the scope of his duty."

Donnell v. Savings Bank, 80 Mo. 165, was a case which involved the construction of section 1, article VI of Wagner's Statutes, page 329, which was substantially the same as sections 2743 and 2745 of article. VII, chapter 42, already referred to and where, in referring to the above quoted paragraph from Ringling v. Kohn, it is said: "These positions are well supported by numerous authorities cited and relied on by the court of appeals in its well considered opinion and we

think state the law correctly when applied to this case as well as to that, citing: Curtis v. Leavitt, 15 N. Y. 9; Bank v. Perkins, 4 Bosw. 420; Barnes v. Bank, 19 N. Y. 156; Fleckner v. Bank, 8 Wheat. 357; Kimball v. Cleveland, 4 Mich. 606; Bank v. Bank, 4 McLean, 208; Bank v. Wheeler, 21 Ind. 90; Robb v. Bank, 41 Barb. 586; Wild v. Bank, 3 Mason, 505." In Ringling v. Kohn it was further said that: ''It is elementary law that a corporation may exercise any unforbidden power which is necessary to carry into effect the powers specially granted. It would be a strange limitation of the authority to purchase exchanges or to loan money which should deny a simple means of obtaining occasional supplies for that purpose. A specific authority to borrow money rarely, if ever, appears in any bank charter. It has always been esteemed a necessary and inherent privilege inseparable from the exercise of banking functions. Without it no bank however ample its assets could at times avoid insolvency." Curtis v. Leavitt, 15 N. Y. 9, *supra*.

The legislature by an act approved April 8, 1895 (Sess. Acts 1895, p. 120), provided that cashiers of savings banks should have no power to borrow money for their banks without being first authorized to do so by the board of directors of such banks. This expression of the legislature was no doubt intended to operate as a limitation upon the power of savings banks' cashiers which had been ruled to exist under the statute in Ringling v. Kohn and Donnell v. Bank, *supra*.

The supreme court of the United States in Bank v. Armstrong, 152 U. S. 346, in construing the provisions of the national banking act held that under the provisions of that act a cashier of a national bank had no authority to borrow money for his bank, execute a note therefor and pledge the assets of the bank as collateral security for the same without the consent of the board

of directors of the bank. But this case is not an authority here for the reason that the question here raised is as to the construction of the statute of this state which has been, as we think, determined adversely to plaintiff's contention by the highest courts of the state, and which must be followed by us regardless of the ruling in Bank v. Armstrong, *supra*.

It is therefore plain to be seen that under the statute in relation to savings banks in force when the plaintiff made said loan to the Farmers Bank that the cashier of the latter bank was authorized, by virtue of the general nature of his employment, to borrow money from plaintiff for his bank, execute the note of the bank therefor, and pledge its assets for the payment of the same, and without having specially conferred upon him by the board of directors power so to do. The action of the board of directors specially conferring upon him this authority was entirely superfluous since it was as has been seen fully implied by the general nature of his employment. He had as much authority to borrow the plaintiff's money for his bank as if the fabricated certificate had recited the truth. The situation of the plaintiff would not have been different if the board of directors had specially authorized the cashier to borrow the plaintiff's money and give the note of the bank therefor. The obligation of the latter bank would be no more binding in the one case than in the other.

The only effect that the certificate could have was to show the cashier's authority to borrow the money and give the note of his bank therefor, and if the authority was ample for that purpose without the action of the board of directors it is difficult to understand in what way the plaintiff was injured by the presentation of the fabricated certificate. The fact that the Farmers Bank became insolvent before the note to plaintiff became due can make no difference. The money

borrowed of plaintiff went to swell the assets of the borrowing bank. It got the full benefit of the loan. The same was drawn out of the plaintiff's bank by the cashier of the borrowing bank in the customary course of its business. This fact is established by the plaintiff's own evidence. But as the cashier of the Farmers Bank was authorized to obtain the loan and to give the note of the bank therefor, the bank was thereby obligated to pay the same whether it got the benefit of the loan or whether or not the same was misappropriated by the officers of the bank. The plaintiff was not required to see that the money so loaned was applied to corporate purposes. Donnell v. Bank, *supra*.

The trial court did not, as we think, err in rejecting the theory on which the plaintiff proposed to submit the case as indicated by the instructions it requested, which were to the effect, that if the defendant as president of the bank signed the false certificate and the plaintiff made the loan to the cashier for the bank, relying upon the truth of the recitals in such certificate, then there was liability on the part of the defendant president, for the reason, as already sufficiently stated, that the cashier, without the special authority that would have been conferred on him had the recitals in the certificate been true, was invested with the requisite authority by virtue of his general employment. His power to bind his bank would not have been enlarged had it been supplemented by special authority from the board of directors.

I think the judgment was for the right party and should be affirmed.

ELLISON, J.—In the view we take of the case it is unnecessary to decide any other question than the right of the plaintiff bank to prescribe any condition it desired before it would enter into the contract of loaning.

Plaintiff saw fit, as a prerequisite to making the loan, to demand that the board of directors of the borrowing bank authorize the borrowing and that it be furnished a certificate that they had done so. This is conceded. So it is conceded that defendants deceived plaintiff by furnishing a fabricated certificate, as stated by Judge Smith; and that the directors never authorized the borrowing; and that plaintiff would not have made the loan but for the fact that it relied upon the genuineness and truth of the certificate.

But the foregoing opinion refuses plaintiff the right to disavow the contract when it discovered the deception and fraud practiced upon it, on the ground that defendant cashier had the legal right to negotiate the loan without the authority of the board of directors.

It appears to me that this view is unsound. Plaintiff was under no obligation to make the loan and had a right to prescribe any condition it saw fit. The mere fact that the condition prescribed was not necessary to make the contract binding is of no consequence, since plaintiff, as a free agent, had the right to say, "we will not enter into the contract unless you have your board of directors authorize it and send us a certificate to that effect." The question here does not concern the execution of a contract already made. But it concerns one's right to govern his own affairs and prescribe his own conditions as a prerequisite to entering into a contract. It is perhaps true that half the contracts proposed by careful and cautious men contain conditions not necessary to make the contract binding, yet no one would suppose they could be forced into a contract which did not contain the conditions demanded. Men have a right to their own particular or peculiar views and they ought not to be deprived of that right by fraud and deception. In the case at bar, plaintiff may have had many reasons

why it would not wish to enter into the contract of loaning to the borrowing bank unless it was done with the knowledge and approval of the board of directors. But whether it had or not, it certainly had the right to say upon what terms it would make the loan; leaving the proposition to be accepted or rejected by the borrowing bank, as it might prefer. "The right of an individual or a corporation to make an unwise bargain is as complete as that to make a wise bargain. The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon that point the judgment of the individual is subject to that of no other tribunal." Jeffries v. Ins. Co., 22 Wall. 47.

The judgment will therefore be reversed and cause remanded. GILL, J., concurs; SMITH, P. J., dissents.