JAMES GREIG, RESPONDENT, *v.* PATRICK W. RIOR-
DAN ET AL., APPELLANTS.

BUILDING CONTRACT—INSUFFICIENT RECORD—FAILURE TO FILE PLANS AND SPECI-
FICATIONS — INVALIDITY. — Where a contract for the erection of a building to cost
over one thousand dollars, provided that the building should be delivered to the
owner free from all liens and charges "in conformity with the plans, drawings,
and specifications for the same," therein referred to as signed by the parties and
kept in the office of the architects for inspection, the filing of such contract for
record, without filing therewith the plans and specifications therein referred to,
or filing a memorandum showing the dimensions and character of the work, is
insufficient; and the contract being in its terms essentially uncertain and in-
definite without such plans and specifications, is rendered void by the failure to
file them with it.

ASSIGNMENT—CLAIM OF CORPORATIONS—AUTHORITY OF DIRECTORS NOT RECORDED.
—An assignment for collection of a claim of a corporation, executed in due
form by the president and manager with the corporate seal attached, made in
the ordinary course of business of the corporation, and by authority of the board
of directors, sitting as such, is a sufficient assignment, although the authority
to make the assignment has not been entered in the records of the corporation.

ID.—POWER OF GENERAL MANAGING AGENT—ASSIGNMENT OF CHOSE IN ACTION FOR
COLLECTION. — A general managing agent of a corporation is the representative
of the corporation, and may do in the transaction of its ordinary affairs what
the corporation itself could do within the scope of its powers; and he may
assign a chose in action of the corporation to a third party for collection.

ID.—EFFECT OF ASSIGNMENT FOR COLLECTION—CONSIDERATION.—An assignment
of a chose in action for collection vests the legal title therein in the assignee re-
gardless of whether or not any consideration is paid therefor by the assignee,
and the assignee may sue thereon in his own name.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco, and from an order denying a
new trial.

The facts are stated in the opinion.

*Stanley, Stoney & Hayes,* for Appellants.

*William H. Jordan, Frank J. Fallon, Parker & Eells, William
H. Fifield, Joseph Leggett, William F. Gibson,* and *Louis F.
Dunand,* for Respondent.

SEARLS, C.—This action was brought to enforce certain
mechanics' liens against property on Bush Street, San Fran-
cisco, known as the French Church, taken in favor of the
San Francisco Lumber Company, a corporation, C. Williams
and F. G. Norman, respectively, and by them assigned to
plaintiff.

Nine other lienholders on the same property instituted actions to foreclose, whereupon the actions were consolidated, a trial had, and a decree entered forclosing all the liens except that of C. Williams, held by the plaintiff Greig, which was rejected.

The appeal is from the final decree and from an order denying a motion for a new trial.

The original contractor for the improvement in which all the liens had their inception was one Joseph Binet, who on the 31st of May, 1888, entered into a contract in writing with the Rev. Father Renaudier (acting by authority of His Grace, the Archbishop, P. W. Riordan, etc.), whom we will designate as the owner, and Binet as the contractor.

The contractor agreed within one hundred working days from date to furnish the necessary labor, material, tools, implements, and appliances, and to erect and complete in a workmanlike manner the alterations and additions to be done at the French Church on Bush Street above Grant Avenue, and known as "Notre Dame des Victoires" (with the exception of the painting), and to deliver it to the owner free from all liens and charges "in conformity with the plans, drawings, and specifications for the same, made by Huerne and Everett, the architects employed by the owner, and which are signed by the parties hereto, and are to be kept and remain in the office of said architects, subject to the inspection of the parties hereto, and others concerned in said erection."

2. The architect was to furnish to the contractor all details and working drawings of the work to be done and materials furnished in accordance therewith, under direction and subject to approval of the architect.

3. The lot of land is described.

4. The owner was to pay therefor ten thousand two hundred and forty-eight dollars; two thousand five hundred and fifty-two dollars when excavation, brick work and entire rough framing of inside and west passage are complete; two thousand five hundred and fifty-two dollars when sashes are in and columns, walls, arches, and partitions lathed and covered with first coat of mortar; two thousand five hundred and fifty-two dollars when work is completed and accepted by architect, and two thousand five hundred and fifty-two dollars thirty-five days

after acceptance. Extra work, if any, to be paid for three fourths when building is accepted, and one fourth thirty-five days thereafter.

.5. The specifications and drawings are intended to co-operate, so that any work exhibited in drawings and not mentioned in specifications or *vice versa* is to be done as though mentioned in both.

6. Owner at liberty to have changes or alterations without avoiding contract, cost thereof to be added or subtracted as the case may be.

There are numerous other provisions in the same somewhat lengthy and carefully drawn contract, but they do not seem essential to the questions raised on appeal.

The contract was duly executed and filed in the office of the county recorder on the second day of June, 1888. The drawings and specifications were not filed nor was any memorandum of any kind filed except as above stated. Work was commenced under the contract, June 5, 1888, and continued until July 14, 1888, during which period some five hundred dollars' worth of work was done, when on the day last mentioned the contractor was stopped by the fire marshall, the work as planned being in violation of the fire ordinance of the city and county of San Francisco.

On the twenty-eighth day of July, 1888, the parties entered into another contract, which provided for changes from the plans and specifications, among which were that instead of raising the old roof and building new side-walls of studding covered with laths and cement, the old roof was to be torn down, the side-walls and piers carried up with brick work four feet above cornice, new roof built, brick walls to first story in rear of church and various and sundry changes, presumably to meet the requirements of the fire ordinance or made necessary in complying therewith. These changes added to the expense seven hundred and thirty-five dollars. This second contract was not recorded. The work was performed in obedience to the contract as amended; the payments made by the owner as therein provided for, except the last, which with extra work left a balance of two thousand seven hundred and sixty-five dollars in the hands of the owner, which was paid into court.

In the mean time liens of subcontractors, laborers, material men, etc., were filed against the property, aggregating five thousand four hundred and thirty-five dollars.

If the contract was duly filed with the recorder as required by the statute, the owner cannot be held liable beyond the contract price. If, on the other hand, the contract was not filed as provided by section 1183 of the Code of Civil Procedure, the price agreed to be paid being in excess of one thousand dollars, the contract was void and the owner (the defendant here) is liable.

That portion of section 1183 involved in the question as presented is as follows: —

"All such contracts shall be in writing when the amount agreed to be paid thereunder exceeds one thousand dollars, and shall be subscribed by the parties thereto, and the said contract or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the total amount to be paid thereunder, and the amounts of all partial payments, together with the times when such payments shall be due and payable, before the work is commenced, be filed in the office of the county recorder, . . . . otherwise they shall be wholly void, and no recovery shall be had thereon by either party thereto, and in such case the labor done and materials furnished by all persons aforesaid, except the contractor, shall be deemed done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof."

The object of the statute in requiring contracts in excess of one thousand dollars to be filed with the recorder seems to be twofold.

1. As a security to the owner, who is thereby shielded from liability to subcontractors, laborers, and material men, beyond his contract price.

2. To afford information to all others furnishing materials or performing services in and about the contemplated improvement, upon which to predicate an opinion founded upon the value of the property, the price to be paid, and the dates of payment, as to whether the contract price is such as will probably

be adequate security, and the lien therefor given to them by the statute sufficient to warrant them in bestowing their labor or furnishing materials for the proposed improvement.

Manifestly, if the improvement when completed, taken with the property upon which it is situated, is of a character having no extrinsic or market value, as, for instance, a mill for crushing quartz rock where there is not and cannot be any quartz rock to crush; or if the property being valueless, the price agreed to be paid is far below the value of the work to be done, it is of the utmost importance that these facts should be known to those about to become interested.

"The plans, drawings, and specifications" in conformity with which the work was to be done were not filed with the contract. They constituted, so far as the "general character of the work to be done" was concerned, the very soul and essence of the agreement. Without them the dimensions and character of the work cannot be determined. Whether it was to be composed of iron, stone, brick, or wood, we cannot tell. A contract to construct a church, build a house, or sink a shaft would be just as definite as the one in question. In the matter of price to be paid, the dates of payment, etc., it was definite and certain. In the matter of "the general character of the work to be done," the contract as filed was without the "plans, drawings, and specifications," which formed an essential part thereof, fatally defective.

If it be urged that the contract did not in terms recite that the "plans, drawings, and specifications" were attached thereto and made a part of the contract, the answer is twofold.

1. It abundantly appears that they formed an essential part of the contract, and they became a part thereof as effectively as though in express terms so designated.

2. Without them the contract is so indefinite and uncertain as not to comply with the requirements of the statute.

We regard the recent cases decided by this court, involving substantially the same question, as conclusive of the matter against the defendant. (*Yancy* v. *Morton,* 94 Cal. 558; *Willamette S. M. Co.* v. *Los Angeles College Co.,* 94 Cal. 229; *Holland* v. *Wilson,* 76 Cal. 434.)

If we view the contract as filed in the light of a memorandum, the same objections are apparent and equally fatal. (*Willamette*

*S. M. Co.* v. *Los Angeles College Co.*, 94 Cal. 229.)  Deeming the original contract void under the statute, it is unnecessary to consider the effect of the amendments to it.  They were not filed, and neither add to nor detract from the original as a valid contract.

Against the three assignments to plaintiff Greig for which he had judgment, appellants raise objections.  The first is to the validity of the assignment by the San Francisco Lumber Company, concerning which it is urged that no authority either by by-law or resolution of the board of directors was shown in Thomas Richardson, the manager of the company, or in Adams, the president, to execute the assignment to plaintiff.  The assignment is in due form, and is executed by W. J. Adams, president of the San Francisco Lumber Company, and Thomas Richardson, manager, with the corporate seal attached.  The evidence tended to show that the assignment was made in the regular course of business of the corporation to plaintiff for collection, the company still having the equitable interest in the claim.  In the language of the manager, Richardson, who was a witness: "This is a corporation.  When it was necessary to make the assignment we talked the matter over in the board, and it was decided that I should make the assignment to Mr. Greig for the purpose of collecting this amount. . . . . The company is not at present the owner of the claim, . . . . the indorsement upon the document is the corporate seal of the company. . It was placed there by the secretary."  Again, "I don't think it was made a matter of resolution, but it was a matter which we are in the habit of doing in the regular way of business.  I had the power to do so, to make the assignment."

There was testimony to the effect that it was not entered in the record because they did not usually do that, and that the matter was discussed at meetings of the board in the ordinary way, and Richardson, the general manager, was at a regular meeting of the board authorized to do as he thought best as to the assignment.  There was a period in the history of corporations when the most ordinary transactions were required to be authorized by solemn resolution of the board of trustees, duly entered in their records, and authenticated by the corporate seal.  With the multiplication of corporations having for their object nearly every business pursuit known to modern times the for-

malities previously regarded as necessary, and which were illy adapted to pursuits requiring prompt action, have been greatly abridged.

"Corporations," says Bronson, J., in *Gillett* v. *Campbell*, 1 Denio, 522, "like individuals, may appoint agents, and make most of the contracts which fall within the scope of their general powers without the use of a seal; the rule was once otherwise, but that day has gone by."

The case in which the above language was used was one in which the president and cashier of a bank, for the purpose of securing a debt owed by the bank, had assigned a debt due to the bank, and it was objected that no authority to make the assignment had been shown by the by-laws of the company or a resolution of the board of directors, and the validity of the assignment was upheld.

*McKiernan* v. *Lenzen*, 56 Cal. 61, was in many respects similar to the case at bar, and the power of the general manager to assign a book account for lumber sold by the corporation to a creditor of the corporation, in payment of an existing debt, was upheld.

Waterman on Corporations, at section 30, says: "As a general managing agent and superintendent is the representative of the corporation, and may do in the transaction of its ordinary affairs what the corporation itself could do within the scope of its powers, he may assign the chose in action of the corporation to its creditors either in payment of or as security for the payment of a precedent debt of the corporation without express authority of the board of directions."

The following cases uphold the same general principle: *Chemical Nat. Bank* v. *Kohner*, 85 N. Y. 189; *Ringling* v. *Kohn*, 6 Mo. App. 333; *Donnell* v. *Lewis Co. Sav. Bank*, 80 Mo. 170; *Topeka Prim. Ass'n U. of B.* v. *Martin*, 39 Kan. 750; *Seeley* v. *San Jose I. M. & L. Co.*, 59 Cal. 24; *Jennings* v. *Bank of California*, 79 Cal. 328; 12 Am. St. Rep. 145; *Smith* v. *Woodville Con. etc. Co.*, 66 Cal. 398; *Sherman Center Town Co.* v. *Swigart*, 43 Kan. 292; 19 Am. St. Rep. 137.

In the conveyance of real estate and in transactions outside the usual scope of its business, corporations are held to much of the strictness by which they were governed in former times. They must act as individuals may act, through agents, and

within the general scope of their ordinary business their managing agents can bind their principals as can those of an individual, and if their agents transcend their powers, the corporations having knowledge thereof and not specially repudiating the act, are equally bound as individuals would be under like circumstances. The defendant here is only concerned to know that the assignment is of such character as to bind the assignor. That the assignor is and will be bound by the act of its general manager is evident from the fact which appears, that the transaction was in the ordinary course of business of the corporation.

2. Because the corporation had notice of the assignment and made no objection thereto.

3. Because the evidence, although not clear and explicit, is sufficient to uphold the position that the board of directors, sitting as such, authorized the assignment, it not being an act requiring a formal resolution to be entered of record.

The objections to the other assignments are not deemed important.

William H. Jordan was the attorney for plaintiff, and as such at the request of the several assignors prepared the assignments, and after their execution they were read by the assignee and apparently left with his said attorney. The assignments were made for collection and no consideration was paid by the assignee. It is matter of common knowledge that for the purpose of saving expense commercial associations and others resort to this method. In such cases the assignee becomes the legal holder of a chose in action, which is sufficient to entitle him to recover, while the assignor retains an equitable interest in the thing assigned, which is of no moment to the debtor. (Pomeroy on Remedies, 2d ed., sec. 132; *Gradwohl* v. *Harris*, 29 Cal. 154; *Allen* v. *Brown*, 44 N. Y. 228; *Williams* v. *Norton*, 3 Kan. 295; *Toby* v. *Oregon Pacific R. R. Co.*, 98 Cal. 490.)

I find no error in the record calling for a reversal, and am of opinion that the judgment and order appealed from should be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are affirmed.

HARRISON, J., GAROUTTE, J., McFARLAND, J.