[No. 1869]

# H. L. JUDELL COMPANY, RESPONDENT, v. GOLDFIELD REALTY COMPANY, APPELLANT.

1. CORPORATIONS—POWERS—"HOTEL."
   A corporation incorporated to do a general hotel business has authority to take over the business of one operating a café in a hotel building owned by the corporation, together with the bar and cigar stand in connection therewith, for the power to do a general hotel business necessarily includes the authority to buy and sell refreshments, cigars, wines, etc.; a "hotel" being defined as a place for the accommodation of travelers with food and lodging.

2. CORPORATIONS—CONTRACTS—LIABILITY.
   Where a corporation which took over the business of another, who was indebted to third persons, held out its secretary and general manager as possessing authority to make contracts with the third persons in settlement of their claims, and the corporation accepted the benefits of agreements entered into by the secretary and manager, a third person could enforce a note executed in the name of the corporation by the secretary and manager in payment of his claim.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens*, Judge.

Action by H. L. Judell and another, copartners, doing business under the firm name of the H. L. Judell Company, against the Goldfield Realty Company. From a judgment for plaintiff, defendant appeals. **Affirmed**.

The facts sufficiently appear in the opinion.

*Pyne & Douglass*, for Appellant:

I. That witnesses on the part of plaintiff allege that J. F. Douglass, who had gone to San Francisco to investigate the accounts of the Goldfield Catering and Café Company to see if the representations made by the café company were correct, telegraphed that the representations were correct and to turn over the accounts. This telegram was sent to Harry Cole and received by Harry Cole, according to the said testimony. J. F. Douglass testified that he found that the representations made by the Goldfield Catering and Café Company were not correct, and that he telegraphed Mr. Cole to turn over the business on account of an agreement or arrangement made between J. F. Douglass and Mr. Cole whereby the business

would be taken over by the Goldfield Realty Company, whatever the event of the investigation was. Mr. Douglass upon returning home refused to sign the agreement known as plaintiff's exhibit No. 3, and it was never signed or entered into either by the Goldfield Realty Company or by J. F. Douglass for the Goldfield Realty Company. That while J. F. Douglass was in San Francisco, he, on the second day of March, 1908, signed the paper known as plaintiff's exhibit No. 6, but without authority from the Goldfield Realty Company, and by that paper agreed to assume the indebtedness of the account of Judell & Company. That immediately upon Mr. Douglass's return to Goldfield, he notified T. L. Foley, the attorney for Judell & Company, who had the claim of Judell & Company in Goldfield, Nevada, for collection, that the Goldfield Realty Company refused to pay the said account of Judell & Company and refused to pay the note signed by him in San Francisco, being plaintiff's exhibit No. 6, for the reason that the goods and wares which the Goldfield Catering and Café Company said they had were not in the possession of the Goldfield Catering and Café Company and that therefore there was no consideration.

II. "A principal is not bound by the unauthorized acts of its agents, but is only bound by the acts of an agent acting within the scope of its authority." (*Lonkey & Smith* v. *Succor Mill Co.*, 10 Nev. 17; 21 Nev. 491, 506; 23 Nev. 42.) It was not shown that Douglass had any authority or that he was ever authorized to sign any note or obligation to pay the indebtedness of Judell & Company, nor was it shown that it was within the scope of his employment to guarantee the debts of the Goldfield Catering and Café Company. Douglass positively testifies that he was never authorized by the Goldfield Realty Company to enter into the agreement with Judell & Company.

III. "A corporation cannot be held responsible for a contract of its officers or agents unless it affirmatively appears that such officers or agents were authorized to make the contract or that the corporation received the benefit derived from the contract." (*Edwards* v. *Water Company*, 21 Nev. 469.) The evidence in this case shows that no consideration nor benefit was derived by the Goldfield Realty Company by reason of the

contract or note signed by J. F. Douglass. That the only evidence that bears upon the question of consideration is that of Groppengiesser, wherein he states that the Goldfield Catering and Café Company turned over its business to the Goldfield Realty Company.

IV. The court erred in not granting defendant's motion for nonsuit when the plaintiff rested his case, for the reason that plaintiff had not proven that the note or agreement upon which plaintiff based his cause of action had been executed by the Goldfield Realty Company and that plaintiff had not proven that J. F. Douglass had the authority to execute the note or agreement for the Goldfield Realty Company, and that plaintiff did not prove that the Goldfield Realty Company had received any benefit or compensation by reason of the signing of the said note or agreement.

V. That the court erred in making its finding of fact No. 7 in which it found "that J. F. Douglass was duly authorized to bind the defendant in making the said agreement," when no evidence has been introduced in the case showing that J. F. Douglass had ever been authorized to make the said agreement for the Goldfield Realty Company. The supreme court of this state in the case of *Edwards* v. *Water Company*, 21 Nev. 469, lays down the rule that a corporation cannot be held responsible for a contract by its officers or agents unless it affirmatively appears that such officers or agents were authorized to make the contract. It was the duty of the plaintiff to prove that J. F. Douglass had been authorized to execute the contract or note set out in the complaint, before judgment could be rendered against the defendant. The burden of proof was upon the plaintiff, as the agreement was not under seal and was not executed by the president and secretary of the corporation.

*John F. Kunz*, for Respondents.

By the Court, SWEENEY, J.:

The plaintiff in this action brought suit to obtain a judgment against defendant in the sum of $961.15, with interest and costs, on account of an indebtedness due plaintiff for

goods, wares, and merchandise sold and delivered by plaintiff to the Goldfield Catering and Café Company, a California corporation, which indebtedness the plaintiff alleges defendant assumed and agreed to pay. The defendant company interposes a defense to the complaint that its manager and secretary was not authorized to bind the company in the execution of said promissory note, evidencing the amount of the indebtedness in dispute, a determination of which issue is determinative of this appeal.

An examination of the record on appeal discloses that the Goldfield Realty Company is a corporation organized under the laws of the State of Nevada, and during the times mentioned was conducting the Goldfield Hotel at Goldfield, Nevada. Among the various objects for which this corporation was formed, as disclosed by its articles of incorporation, we find: " (a) To purchase, sell and own real estate, to erect buildings thereon, and to engage in a general hotel business. (b) To engage in the business of buying and selling merchandise, wines, liquors and cigars either at wholesale or retail. (c) * * * (d) To engage in a general commission business, and to do all and anything necessary, suitable or convenient for the accomplishment of any of the purposes or attainment of any of the objects hereinbefore enumerated." The transcript further discloses that the Goldfield Catering and Café Company is a California corporation, and owned, operated, and conducted the café and restaurant in the Goldfield Hotel, as well as the bar and cigar stand in connection therewith; that in January, 1908, the Goldfield Catering and Café Company was indebted to various creditors, not only for furniture and fixtures, but also for goods, wares, and merchandise sold to it in conducting the said branches of business, and for part of which said indebtedness notes had been given to some of its creditors and indorsed by the appellant, Goldfield Realty Company. To secure the Goldfield Realty Company for indorsing these notes of indebtedness, a mortgage was executed by the Goldfield Catering and Café Company on January 17, 1908, to the Goldfield Realty Company, under the terms of which, however, the Goldfield Catering and Café

Company was permitted to remain in possession of all of the personal property so mortgaged.

Pursuant to certain negotiations between the officers and agents of the Goldfield Realty Company and the Goldfield Catering and Café Company, the following resolution, prepared and drawn by J. F. Douglass, general manager and secretary of the Goldfield Realty Company, was passed on February 19, 1908, by the board of directors of the Goldfield Catering and Café Company:

"Whereas, the Goldfield Catering and Café Company is indebted to various merchants of Goldfield, San Francisco, Oakland and other places in large sums of money, aggregating many thousands of dollars, for the equipment and supplies used in the kitchen, dining-room and bar room in the Goldfield Hotel; and whereas, owing to prevailing conditions it is unable to secure the money for payment of these bills either through profits of its café and bar, or by any other means; and whereas, the Goldfield Realty Company is desirous of purchasing said equipment and stock from the persons and concerns from whom the same was secured, providing the Goldfield Catering and Café Company releases all its claim, both in law and in equity, in and to said equipment and stock to said persons and concerns from whom the same was secured. Now, therefore, be it resolved, that in consideration of the surrender of all promissory notes given by this company in payment for said equipment and stock, and the release of this company from all indebtedness on account of said equipment and stock where same is not secured by notes or otherwise by its several creditors, this company will surrender all its right and claim of whatsoever nature in and to said equipment and stock of goods to the persons from whom same was secured, and that this resolution be effective as to any individual instance of indebtedness as soon as this company is released from same. (Signed) O. Groppengiesser. Harry Cole, Acting Secretary. Approved: Harry Cole, Arthur Starkey, B. J. Sears."

Pursuant to this resolution, the business and assets of the Goldfield Catering and Café Company in the Goldfield Hotel

were turned over to the appellant, which included all of its furniture, stock, etc., in bar, kitchen, and dining-room, which the appellant accepted and received. Afterwards the Goldfield Realty Company leased the said business formerly owned and conducted by the Goldfield Catering and Café Company to the individual stockholders or part of them of the said Goldfield Catering and Café Company. In conformity with the understanding evidenced by the foregoing resolution, J. F. Douglass, the secretary and manager of the defendant company, while in San Francisco arranging the indebtedness with the creditors of the catering company, called upon the plaintiff, and proposed, executed, and delivered the note in dispute in behalf of the defendant company, and represented to the plaintiff that he was fully authorized to make the arrangements for an assumption of the indebtedness of the Goldfield Catering and Café Company for the defendant Goldfield Realty Company, and recited in the note given that he was duly authorized to make said note as evidenced by the following indenture:

"[Letterhead of Hotel St. Francis.] San Francisco, Cal., March 2nd, 1908. H. L. Judell & Company, San Francisco, Cal.—Gentlemen: For and in consideration of the substitution of the Goldfield Realty Company, as your debtor in the sum of nine hundred and fifty dollars ($950.00), subject to correction, in the place of the Goldfield Catering and Café Company, and the further consideration of your extending the time for the payment of the said amount as hereinafter provided, we, the undersigned, Goldfield Realty Company, by J. F. Douglass, our secretary, first duly authorized, hereby agree to pay the said amount above named, at the times and in the manner following, to wit: One-half of said amount to be paid April first, 1908; and one-half of said amount to be paid May first, 1908. Respectfully, Goldfield Realty Company, By J. F. Douglass, Secretary."

It appears from the evidence that after the Goldfield Realty Company had taken over the furniture and fixtures of the Goldfield Catering and Café Company, it retained possession of said property and was considered publicly to be the owner thereof. It publicly conducted the café and bar, bought supplies for both, paid for labor, and retained the benefits and

receipts from the same, and paid a part of the said unsecured debts of the Goldfield Catering and Café Company as well as indebtedness for which notes had been given.

The evidence shows that J. F. Douglass was the general manager and secretary, and so represented himself, of the Goldfield Realty Company, and that he conducted the business without consultation with the board of directors; that he was held out by the company as the man having absolute control of the business, and the directors admitted at the time of the trial that J. F. Douglass was the sole manager to look after all of the business of the company within the scope of its powers as defined by its articles of incorporation, and that J. F. Douglass was in the entire charge of all of its business.

It appears that the Goldfield Catering and Café Company delivered possession of everything contained in the bar, kitchen, and dining-room to the Goldfield Realty Company, and that thereafter the realty company conducted the business by leasing the same. By acceptance of the assets of the catering and café company the Goldfield Realty Company obligated itself to pay the debt owing to the respondent herein, and the catering and café company turned over to the realty company the bar and grill upon the telegraphic instructions of J. F. Douglass, with whom the understanding was had. While the witness Douglass testified that he was not specially authorized by the directors of the Goldfield Realty Company to enter into the arrangement wherein this debt was assumed, yet the evidence discloses that Douglass had been authorized by the defendant company as its sole representative to manage all contracts and expenditures for material necessary for the construction of the Goldfield Hotel, a building reputed to have cost from $150,000 to $200,000, and the evidence further discloses that Mr. Douglass had full charge of all the business affairs of the company, and had been permitted to transact all of its business, and was so held out to the public at Goldfield and elsewhere. Similar notes given under similar circumstances to other creditors of the catering and café company by J. F. Douglass in behalf of the realty company were paid by the realty company without objection from the board of directors.

In addition to all this the company received and retained
the property of the catering and café company, and in view
of the representations made by Mr. Douglass, the general man-
ager and secretary of the realty company, that he had the
authority to execute the promissory note in question, and
informed the respondent that he was making similar arrange-
ments with other creditors of the catering and café company
to assume their indebtedness, which was assumed and after-
wards paid by the realty company, and the fact that the said
Douglass was held out in the community as the sole repre-
sentative of the realty company, which said company accepted
the benefits of the agreement entered into by its general man-
ager and secretary, and where it is clear the realty company
had the authority under its articles of incorporation, to pur-
chase the property of the catering company for the benefit of
the hotel owned by the realty company, we do not think it
can be said, under these circumstances, that this corporation
is not bound by the act of its general manager and secretary.

We believe that the Goldfield Realty Company had ample
authority, under the scope of its enumerated powers in its
articles of incorporation, to take over the business of the Gold-
field Catering and Café Company, and its general manager was
vested with ample authority to make this contract for and on
behalf of the realty company with the catering and café com-
pany. The Goldfield Realty Company was incorporated to do
a general hotel business, which necessarily included the
authority to buy and sell merchandise, wines, liquors, and
cigars, and such other materials as go to stock a hotel, café or
restaurant. The word "hotel," which is synonymous with the
word "inn," is defined as a place for the accommodation of
travelers with food and lodging, and necessarily implies the
right to purchase the business of the catering and café com-
pany in question, especially where, as in this case, said café
and bar were in the lobby of the Goldfield Hotel, the main
property of the realty company. (20 Cyc. 1070; Pinkerton v.
Woodward, 33 Cal. 557, 91 Am. Dec. 657.)

After a careful review of the evidence in this case, we are of
the opinion that it is conclusively shown that Mr. Douglass, as
general manager and secretary of the Goldfield Realty Com-

pany, was vested with complete authority by the board of directors of the said realty company, in his capacity as general manager and secretary of said company, to execute the said promissory note in dispute for said company under the circumstances disclosed. Said secretary, J. F. Douglass, having been held out by said company to be its general manager, and having been shown to have done transactions of a similar nature in behalf of the realty company, and all of his actions accepted and none repudiated by the board of directors, except this especial act of Mr. Douglass, and that the said realty company having taken over the property of the catering and café company, and having received and retained the benefits of the agreement entered into by its representative with the said catering and café company, and the said general manager and secretary of the realty company having represented to respondent herein that he was authorized to bind the realty company, as it is shown he was authorized to do with other creditors of the catering and café company, we believe the respondent herein had the right, under the circumstances, to accept as it did the representations made in good faith, and that the Goldfield Realty Company is in no position to avoid the responsibility of the act of its general manager in this transaction, and that the judgment of the lower court should be affirmed. (*Western Homestead Co.* v. *First National Bank*, 47 Pac. 721; *Colorado Springs Co.* v. *Am. Pub. Co.*, 97 Fed. 843, 38 C. C. A. 433; *Greig* v. *Riordan*, 99 Cal. 316, 33 Pac. 913; *Union Gold M. Co.* v. *Rocky Mt. Nat. Bank*, 2 Colo. 565, affirmed 96 U. S. 640, 24 L. Ed. 648; *Brown* v. *Crown Gold M. Co.*, 150 Cal. 376, 89 Pac. 88; *Allen* v. *Citizens' Steam Nav. Co.*, 22 Cal. 28; *Extension G. M. Co.* v. *Skinner*, 28 Colo. 237, 64 Pac. 198; *Meyer* v. *V. & T. R. Co.*, 16 Nev. 341; *Bergtholdt* v. *Porter Co.*, 114 Cal. 681, 46 Pac. 738; *Whitaker* v. *Kilroy*, 70 Mich. 635, 38 N. W. 606; *Moss* v. *Averell*, 10 N. Y. 449; *Siebe* v. *Joshua Machine Works*, 86 Cal. 390, 25 Pac. 14; *Shaver* v. *Bear River Co.*, 10 Cal. 396; *Carey* v. *Phil. Petroleum Co.*, 33 Cal. 694; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67, 34 Pac. 527; Morawetz on Corp., secs. 630 and 633; *Kelsey* v. *Bank*, 69 Pa. 426; *Murray* v. *Lumber Co.*, 143 Mass. 250, 9 N. E. 634; 1 Beach, Corp. Dec. 195; *Sherman* v. *Fitch*, 98 Mass. 59; *Edwards*

v. *Carson Water Co.*, 21 Nev. 469; *Bean* v. *Pioneer M. Co.*, 66
Cal. 451, 6 Pac. 86, 56 Am. Rep. 106; *Main.* v. *Casserly*, 67 Cal.
127, 7 Pac. 426.)
    It is so ordered.