[Civ. No. 771. Second Appellate District.—April 28, 1910.]

ROBERT DOLLAR, Respondent, v. THE INTERNATIONAL BANKING CORPORATION, Appellant, and EDWIN H. LAMME, Codefendant.

Action by Assignee of Bank Deposit Receipt—Non-negotiable Instrument—Effect of Assignment.—A bank deposit receipt for money locally deposited by an American Commercial Company with an International Banking Company doing business at Hongkong, repayable there with interest at five per cent, to remain until twelve months' notice on either side expires, to be paid on return of the receipt properly indorsed by the depositors, and stamped "not transferable," is a non-negotiable instrument, under the law-merchant, but is assignable, though the assignee obtains no better title to the instrument than his indorser, notwithstanding it was indorsed to him before maturity.

Id.—Demand of Payment at Hongkong—Refusal—Action in This State.—Where payment of the note was demanded in Hongkong by the assignee of the instrument, and payment was there refused, an action may be maintained against the International Banking Company in this state, where it has an office here, and enters an appearance and questions the sufficiency of the complaint.

Id.—Importance of Proper Demand.—Whether or not proper demand was made at the place of payment becomes important in determining the right to bring the action in a court of this state, as well as in ascertaining upon what basis the value of the money so deposited is to be fixed, if plaintiff is entitled to recover.

Id.—Indorsement to Plaintiff's Assignor—Payment of Ascertained Debt of Payee—Judgment of Consular Court.—Where the indorsement of the payee to plaintiff's assignor was in consideration of the payment of an indebtedness of the payee to the assignor, the judgment of a consular court establishing the debt established nothing more than that the corporation payee was indebted to the first assignor in the sum named in the judgment, upon payment of which the corporation payee made the indorsement.

Id.—Ineffective Supplemental Decree — Attempt to Transfer Title.—A so-called supplemental decree of the consular court, attempting to transfer the title of the corporation payee to the debtor, was ineffective for that purpose, and did not affect the contract between that company and the banking corporation appellant.

Id.—Equitable Estoppel not Pleaded.—An agreement made between the manager of the banking corporation and the creditor of the payee that if he obtained a judgment against the corporation payee

for an amount equal. to or greater than the debt of the banking corporation therein, and the debt was applied upon it, the banking corporation would make payment of the certificate to such satisfied creditor on presentation, was based upon an equitable estoppel, which is not available unless pleaded.

Id.—Basis of Recovery.—If plaintiff, as assignee of such first assignee, recover in the action, he must do so on the theory of the enforcement of the express contract made with the managing agent of the corporation payee, or the implied contract made by said corporation with the depositor.

Id.—Findings on Second Dismissed Consular Action not Conclusive.—It is held that findings in a second consular action dismissed without prejudice to a new action were conclusive upon neither party, there being no finding that it was rendered for want of authority accompanying the presentation of the certificate by the plaintiff's assignor.

Id.—Testimony Showing Authority of Managing Agent of Payee in China.—Where the testimony clearly establishes that the vice-president of the corporation payee was its managing agent in China and transacted all its business therein, created debts against the company and paid them in its name, and that no other person acted as its agent in China, such managing agent was authorized to collect the debt, or to make an assignment thereof in payment of the company's debt to an assignee, as such manager.

Id.—Concern of Defendant Bank.—The defendant banking corporation is concerned only in knowing that the assignment of the evidence of debt or chose in action against it is of such character as to bind the assignor payee.

Id.—Incompetent Oral Contract with Payee.—The incompetency of parol evidence to vary a writing may be considered as matter of law, though admitted without objection; and if the American Commercial Company, by its general manager, had itself presented the deposit receipt and demanded payment, no compliance with an oral contract that the managing agent should produce a resolution of the board of directors could have been made by the defendant a condition precedent to payment of the deposit to such manager.

Id.—Authority of Managing Agent to Make Assignments.—Where the managing affairs of a corporation are intrusted to a general managing agent, he has power to transfer the chose in action of the corporation to its creditors, either in payment or as security for a pre-existing debt of the corporation, without express authority from the board of directors, and an assignment so made is valid.

Id.—Presumed Authority of Managing Agent—Express Authority not Necessary.—The presumption is that such assignment was made by competent authority. No special resolution authorizing him to act in this respect was necessary.

ID.—OSTENSIBLE AGENCY.—An ostensible agency is created when the principal intentionally or by want of ordinary care authorizes a third person to believe another to be his agent, even if not really employed by him. The authority of such an agent is such as the principal allows such person to believe the agent to possess.

ID.—GOOD FAITH OF CREDITOR PERFORMING SERVICES FOR PAYEE, AT REQUEST OF MANAGING AGENT.—Where there is no question of the good faith of the first assignor of the bank deposit in doing services for the corporation payee, at request of its managing agent, or in taking a receipt of its indebtedness in full payment of the bank certificate, he thereafter stood in the shoes of the American Commercial Company as the owner of the paper, subject only to such equities as the bank might set up against the company payee itself.

ID.—ORAL CONTEMPORANEOUS AGREEMENT AS TO PROOF OF AGENT'S AUTHORITY NOT BINDING ON ASSIGNEE.—The oral contemporaneous agreement between defendant and the agent of the corporation payee as to proof of his authority, not being binding upon the payee, can constitute no defense to the action of the assignee of the payee, or his successor in interest.

ID.—ACQUITTANCE BY ASSIGNEE PROTECTION TO BANK.—The acquittance by the bona fide assignee of the corporation payee would be a sufficient defense in favor of the banking corporation defendant to any subsequent demand upon the bank by the corporation payee.

ID.—CONTEMPORANEOUS ORAL AGREEMENTS BETWEEN PARTIES TO WRITTEN CONTRACT FOR MONEY.—Contemporaneous oral agreements between the parties to a written obligation to pay money, as to the manner of the negotiation, cannot be set up as a defense against payment of the money under the contract in an action by the payee or his assignee.

ID.—RULE AGAINST VARIATION OF WRITTEN CONTRACTS BY PAROL EVIDENCE—APPLICABILITY TO NON-NEGOTIABLE PAPER.—Such oral agreements come under the rule that written contracts cannot be varied by parol agreements, and this rule is applicable to such agreements, irrespective of whether the instrument be negotiable or non-negotiable.

ID.—INCOMPETENCY OF PAROL EVIDENCE DISTINGUISHED FROM SECONDARY EVIDENCE.—The rule that incompetent parol evidence to vary a writing can have no legal affect, though proved without objection is to be distinguished from the rule as to secondary evidence.

ID.—AUTHORITY OF MANAGING AGENT—NEGATIVE AND POSITIVE PROOF. The failure of the corporation payee to object at any time to the authority assumed by its managing agent in China, and the absence of any proof by the defendant that he lacked such authority, taken in connection with the positive proof that he was such managing agent, and exercised all the authority of the corporation

payee in China, together constitute competent proof of his authority as such managing agent.

ID.—TESTIMONY TO AUTHORITY OF AGENT —INFERENCES—FACTS STATED —APPELLANT NOT PREJUDICED.—Where the assignee of the payee, in testifying to the authority of the managing agent, made statements in the nature of conclusions or inferences, but these were accompanied by a statement of the facts from which the inferences were drawn, it cannot be said that such inferences objected to could have been prejudicial to the appellant's case before the trial court.

ID.—DEMAND REGULARLY MADE BY ASSIGNEE—DAMAGES—INTEREST.— The demand having been regularly made by the first assignee at Hongkong, the damages for failure to pay are to be computed under the rule declared in subdivision 1 of section 3336 of the Civil Code, which would entitle the plaintiff to the market value at Hongkong when payment was refused, with interest, as allowed in the judgment.

ID.—INDEMNITY BOND NOT REQUIRED UPON LOSS OF NON-NEGOTIABLE INSTRUMENT.—The rule in courts of equity that a bond will be required upon a lost instrument has well-recognized exceptions, one of which is where the note is non-negotiable.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Platt & Bayne, Geo. J. Leovy, and Lloyd M. Robbins, for Appellant.

J. Wade McDonald, for Plaintiff-Respondent.

Puterbaugh & Puterbaugh, for Edwin H. Lamme, Defendant.

TAGGART, J.—This is an action by the assignee of the indorsee of a deposit receipt to recover the value in United States money of two thousand Mexican dollars deposited with the banking-house of the defendant corporation, located in Hongkong, China. Judgment was for plaintiff against the banking corporation, and the latter appeals from the judgment and the order denying its motion for a new trial.

The depositor, the American Commercial Company, was incorporated in the District of Columbia for the purpose of

doing a general brokerage business wherever such business could be lawfully conducted. Its certificate of incorporation, dated August 13, 1904, provides that "the concerns of the company for the first year shall be managed by not less than three nor more than fifteen directors, namely" (naming five persons, as to whom it is important here to say only that one is "E. Edwards"). The main office is fixed in the city of Washington. So far as the record in this case discloses, it has never done any business except in China. On November 26, 1904, Mr. E. Edwards, accompanied by two of the other directors of the American Commercial Company, their names not being disclosed, deposited with the branch bank of the defendant corporation located at Hongkong, China, two thousand Mexican dollars, receiving therefor a receipt as follows:

"Notice of withdrawal given 26 November, 1904, due 26 November, 1905.

"International Banking Corporation.
"Deposit receipt.
"Not transferable.
"Hong Kong, 26 November, 1904.
"2,000 Locally.
"Received from Messrs. The American Commercial Company Dollars Two Thousand Locally as a deposit repayable here, bearing interest at the rate of five per cent per annum, to remain until twelve months notice on either side expires.
"No. 3/134.
"For the International Banking Corporation.
"L. L. FESPNER,         CHAS. C. R. SCOTT,
         "Accountant.           Manager."

On the back of said receipt were the following words in print: "N. B. The within sum cannot be drawn, unless this receipt is returned, signed by the depositors; nor can the amount be drawn against in separate sums by cheque or draft. The interest will cease at the expiration of notice of withdrawal." From the deposition of Manager Scott, who signed the foregoing receipt, it appears that when Mr. Edwards called, accompanied by the other gentlemen as above stated, he, Scott, acting on behalf of the defendant corporation, at first refused to receive the money because "Mr. Edwards could show me no authority for acting as managing director of the American Commercial Company. He, how-

ever, declared that he would be able to produce the necessary papers, which I told him would have to be signed by the British or other foreign consul in the United States before he could withdraw the money, and he made the deposit on that understanding." No objection was made to the introduction of this testimony, but the incompetency of parol evidence to vary a writing may be considered as a matter of law.

Through transactions had with E. Edwards, acting in the name of the American Commercial Company, the latter became indebted to the defendant Lamme who, in an action brought in the United States consular court at Shanghai, China, on July 27, 1905, recovered judgment against the American Company in the sum of two thousand one hundred and fifty Mexican dollars, with interest. On October 2, 1905, he also procured from the same court what is designated as a supplemental decree and order of satisfaction of judgment, wherein it is recited that the deposit receipt above set out "was by the defendant duly assigned, transferred and delivered to the plaintiff by the defendant on or about the tenth day of March, 1905, to secure the debt due from the defendant to plaintiff upon which the judgment in this cause was rendered." It is further recited that plaintiff is willing to take the instrument in satisfaction of the, judgment, and ordered that the title of the plaintiff in the receipt and the money evidenced thereby be confirmed and quieted in him and the same credited on said judgment in full payment and satisfaction thereof. The recital in the judgment in this consular action as to service of summons and acquiring jurisdiction of the defendant is as follows: "That the defendant has been duly served with summons by delivering a copy of the same to Edward Edwards, the vice-president, a director and agent of said defendant, he being the,highest officer of said defendant company found within this jurisdiction, and the said defendant having appeared by said Edwards and filed its answer herein, admitting all the allegations of plaintiff's complaint." The only showing of jurisdiction to enter the "Supplemental Decree" is that which appears in the original judgment-roll resulting in the judgment in favor of Lamme against the American Company.

The "deposit receipt" indorsed, "The American Commercial Company, by Edward Edwards, (Per) Manager,"

was thereupon presented at its maturity to the defendant bank at Hongkong, on behalf of Lamme, accompanied by a copy of the consular judgment and decree above mentioned, but payment was refused because no showing was made of Mr. Edwards' authority to indorse for the company, and thus give the bank a legal discharge. Afterward, to wit, on December 29, 1905, Lamme brought another action in the consular court of Shanghai against the International Banking Corporation and The American Commercial Company. The former appeared and the latter defaulted (there being a recital in the "Findings and Judgment" that the American Company had "been duly served with summons" and failed to appear). In this action the court found all the facts substantially as above set forth as to the indebtedness of the American Company to Lamme, the making of the judgment of July 27, 1905, and the decree of October 2d; the presentation of the receipt and the defendant bank's refusal to pay; also, that no one else had made any claim upon the money; that there were no liens, claims or demands against it, and that the bank had no setoff or demands against it, but "that the said money having been so deposited with the said International Banking Corporation at Hongkong and the said deposit receipt being non-negotiable, the same is collectible only under adequate authority from the said American Commercial Company." Only inferentially is it found that adequate authority was not shown, but the court's conclusion of law is that plaintiff is not entitled to recover in this action, and the judgment is that the action be dismissed without prejudice to the plaintiff in bringing any other on account of the subject matter of this action. The date of this judgment, as stated in the record, is February 24, 1905, but it is apparent that it should be 1906. No appeal was ever taken therefrom.

Subsequently the receipt of deposit was lost (March, 1907), and later (January 2, 1908), the rights of defendant Lamme in the instrument in question and the funds which it represented were assigned to plaintiff, and, after demand made by plaintiff on the San Francisco house of defendant, this action was brought to recover the value of the Mexican money in United States gold coin at Hongkong on the date of the demand made by Lamme (November 27, 1905), together with

interest thereon at the rate of five per cent per annum from November 26, 1904.

The instrument in question was by this court declared to be an assignable instrument but not negotiable in the sense that the term "negotiable" is used when applied to commercial paper. (*Dollar* v. *International etc.*, 10 Cal. App. 83, [101 Pac. 34].) By the law of the case, then, the instrument must be considered as non-negotiable, and while it might be transferred by indorsement, the indorsee obtained no better title to the instrument than his indorser, notwithstanding it was indorsed to him before maturity. (Civ. Code, sec. 1459.) It was also held by this court, passing upon the allegations of the complaint, that, although the instrument was payable at Hongkong, yet after proper demand had been made at that place and payment refused suit might be brought in this state "where the parties enter an appearance and question only the sufficiency of the pleading as stating a cause of action."

Whether or not a proper demand was made at the place of payment becomes important in determining the right to bring the action in a court of this state, as well as in ascertaining upon what basis the value of the "money" so deposited is to be fixed, if the plaintiff is entitled to recover. The judgment of the consular court of July 27, 1905, even if it were conceded to be based upon proper service on the American Commercial Company, established no more than that that company was indebted to Mr. Lamme in the sum named in the judgment. The so-called "supplemental decree," whereby the court attempted to transfer the title of the American Company to the receipt to Mr. Lamme, was ineffective for that purpose, and did not affect the contract between that company and the appellant. The only possible application it could have would be in connection with the testimony of Mr. Lamme to the effect that Mr. Scott made a statement under oath that he had a conference with General Bragg, the latter acting on behalf of Mr. Lamme, wherein there was "practically" an arrangement, and Scott consented, that if the judgment in the consular court first above mentioned were obtained and the certificate applied upon it, "that the money would be paid on presentation." Such an estoppel being in the form of a new cause of action should have been pleaded

to become the basis of a recovery. If plaintiff recovers in this action he must do so on the theory of an enforcement of the express contract made by Edwards, or the implied contract of a depositor, no estoppel being pleaded.

Both appellant and respondent rely upon the "findings and judgment" in the second consular action, which were rendered on February 24, 1906. No finding made therein, however, which was not necessary to the judicial action taken by the court, can affect the rights of either of the parties, and the judgment, as above stated, is one of dismissal without prejudice to the plaintiff's right to bring another action. (*Rosenthal* v. *McMann,* 93 Cal. 505, 509, [29 Pac. 121].) The findings made on behalf of the plaintiff are conclusive upon no one, and there is no express finding of fact from which it can be determined that the judgment of dismissal was rendered because the authority accompanying the presentation of the instrument was not adequate. It is only argumentatively that this can be assumed to be the basis of the court's dismissal. Neither can this be implied or presumed from the judgment itself.

It appears from Mr. Lamme's testimony on the trial that he knew from dealings had by him with Edwards in the name of the American Commercial Company; from papers and documents seen by him while acting as attorney for the company on the employment of Edwards; from his knowledge that Edwards appointed agents and subagents for the corporation in Canton, Shanghai, and other places in China, and created debts against the company and paid them in its name; and from the fact that no other person acted as its agent in these places during this time, and that he never heard the authority of Edwards questioned except in this transaction, as well as from Edwards' own statement, that he (Edwards) was the vice-president, one of the directors of and the general manager for the American Commercial Company in China. It is not shown that any of this information was brought home to the defendant bank, or that the bank had any other way of knowing that Edwards had such authority or occupied such a position, but from Mr. Lamme's testimony it appears that Mr. Scott stated at the trial before the consular court that "the only reason for refusal to pay the money was that there had been no power of attorney pre-

sented at the bank showing the authority of Edwards," etc. "He wanted a resolution of the board of directors."

The defendant bank is concerned only in knowing that the assignment of the evidence of debt or chose in action is of such character as to bind the assignor. (*Greig* v. *Riordan,* 99 Cal. 323, [33 Pac. 913].) If the American Commercial Company had itself presented the deposit receipt, no compliance with the oral contract as to the evidence of authority of Edwards could have been made a condition precedent to payment, if it be assumed in this connection that such a parol contract was admissible in evidence, or, being in evidence, could be considered by the court. Indeed, it could not well be contended that, in the absence of this contract, Mr. Edwards could not himself, in his capacity of manager, have withdrawn the money upon signing the name of The American Commercial Company, or have made a valid assignment or indorsement of the instrument as manager. As said in *McKiernan* v. *Lenzen,* 56 Cal. 61, page 64: "The result of the cases seems to be, that where the management of the affairs of a corporation is intrusted to a general managing agent, he has power to assign the choses in action of the corporation to its creditors, either in payment of, or as security for the payment of, a precedent debt of the corporation, without express authority from the board of directors, and an assignment so made is valid. The presumption is, that the assignment was made by one having competent authority." No special resolution authorizing him to act in this respect was necessary. (*Tuller* v. *Arnold,* 98 Cal. 523, [33 Pac. 445]; *Greig* v. *Riordan,* 99 Cal. 323, [33 Pac. 913].)

An ostensible agency is created when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. The authority of such an agent is such as the principal allows such persons to believe the agent to possess. (Civ. Code, secs. 2300, 2317.) There is no attack here made upon the good faith of Mr. Lamme in performing services for the American Commercial Company at the request of Mr. Edwards, or in taking the receipt in full payment for his services so rendered, and this must be assumed in considering the question before us. Mr. Lamme then stood in the shoes of the American Commercial Company as owner of the paper, subject only to such equities as the bank might set up against

that company. If the oral contemporaneous agreement as to what should constitute a showing of Mr. Edwards' authority would not constitute a defense against the demand of the company, neither would it against the demand of Mr. Lamme. The latter being the *bona fide* assignee of the Commercial Company, his acquittance to the bank would be sufficient defense to any subsequent demand made upon the bank by such company. Contemporaneous parol agreements made between the parties to a written obligation to pay money, as to the manner of its negotiation, cannot be set up as a defense against payment of the money under the contract in an action by the payee or his assignee. Such agreements come within the rule that written contracts cannot be varied by parol agreements, and the rule is applicable to such agreements irrespective of whether the instrument be· negotiable or nonnegotiable in character. (*Johnson* v. *Washburn,* 98 Ala. 258, [13 South. 48] ; *Erwin* v. *Saunders,* 1 Cow. (N. Y.) 249, [13 Am. Dec. 520] ; *Frost* v. *Everett,* 5 Cow. (N. Y.) 497 ; *Dow* v. *Tuttle,* 4 Mass. 414, [3 Am. Dec. 226] ; *Knox* v. *Clifford,* 38 Wis. 655, [20 Am. Rep. 28] ; *Reed* v. *Reed,* 11 U. C. Q. B. 23 ; *Gorrell* v. *Home Life Ins. Co.,* 63 Fed. 371, 11 C. C. A. 240, 246.)

It also appears from the written opinion of the trial judge found in the record that the findings as to the rights of plaintiff were predicated to some extent at least upon the showing that if there had been any real question as to the authority of Edwards to act in the premises, his principal would have made known its objections to the defendant bank within the time that elapsed from the date of the deposit of the money until the bringing of the action. So, also, in this connection may be considered the materiality of the evidence of Lamme tending to establish, not only that Edwards was the manager, but that there was no other representative of the company in China, and that no one questioned his authority to act in this sole and unrestricted manner. There was no showing upon the part of the defendant bank with respect to the absence of authority of Edwards or any denial of his powers generally, and the evidence mentioned tended to show that all the business of the company in China was performed by him or those whom he appointed and directed, and was competent for that purpose.

No indemnity bond was essential in giving judgment, on account of the loss of the instrument sued on. The rule as to indemnity is simply that if it can be shown in any way that the defendant may be wrongfully injured by paying, he may require security, but only then. The rule in courts of equity that a bond will be required before entering judgment upon a lost instrument has several well-recognized exceptions, to wit: (1) Where the note is not negotiable; (2) where, though negotiable, it is payable to the order and unindorsed, or specially indorsed; (3) where the instrument is clearly shown to have been destroyed; (4) where the lost instrument has been traced to the defendant's custody; and (5) when it is shown that the defendant is protected by the statute of limitations. (Daniel on Negotiable Instruments, 5th ed., sec. 1481.) The evidence would justify a finding that the instrument in this case has been lost, but no finding in this regard was made; however, it is clear that the instrument itself is non-negotiable in character.

The testimony of the witness Lamme as to his knowledge of the capacity in which Edwards was acting for the American Commercial Company contained some things which were in the nature of conclusions or inferences, but these were accompanied by a statement of the facts from which the inferences were drawn, and we do not think the evidence objected to could have prejudiced appellant's case before the trial court.

The demand for payment having been regularly made by Lamme at Hongkong on November 27, 1905, the damages for failure to pay are to be computed under the rule declared in subdivision 1 of section 3336 of the Civil Code. This would entitle plaintiff to the market value at Hongkong when payment was refused, together with interest as allowed in the judgment. Indeed, it would not have been unwarranted had the court allowed interest at seven per cent after the date of maturity of the receipt, but no complaint is made by respondent in this respect.

Judgment and order affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 28, 1910, and the following opinion was then rendered thereon:

THE COURT.—Appellant presents a petition for a re-hearing on this appeal wherein, among other things, exception is taken to the following language contained in the opinion of this court, filed April 28, 1910, to wit: "No objection was made to the introduction of this testimony, but the incompe-tency of parol evidence to vary a writing may be considered as a matter of law." In support of the contention that this is not a correct declaration of the law a number of cases are cited to sustain the proposition that, in the absence of objec-tion, secondary evidence is sufficient to support the findings of a court based thereon. The rule declared by this court is entirely distinct from that applied in those cases. Whether or not a contract in writing may be varied by parol evidence is a question of substantive law, while the admission or rejec-tion of secondary evidence is governed by the rules of evidence. (1 Greenleaf on Evidence, 16th ed., sec. 305a.) Where a contract is reduced to writing, whether required by law to be written or not, the writing supersedes all other negotiations and stipulations concerning the matter made at the time or prior thereto. (Civ. Code, sec. 1625.) If the terms as agreed upon have not all been reduced to writing, these can be supplied only by an appropriate proceeding, or under proper allegations. (Code Civ. Proc., sec. 1856; *Germain Fruit Co.* v. *Armsby Co.*, 153 Cal. 595, [96 Pac. 319].) By way of illustration of the distinction between the rule declared by this court and that cited by appellant, it may be said, that parol or secondary evidence, unobjected to, might supply the terms, or purport, of a contract which had been reduced to writing, and, in this form, furnish sufficient proof to sustain a finding, but parol evidence would neither be admissible to vary this contract, nor, if admitted without objection, be sufficient to support a finding which was in con-flict with or which in any manner varied the original written contract which the parties entered into. The purpose of the rule relating to the varying of a writing by parol evidence is to prohibit this from being done, while the rule relating to the admission of secondary evidence goes only to the form in which the evidence may be introduced. These rules are in no way inconsistent, and the rule as to secondary evidence

is not applicable here. The other matters presented were duly considered in the original opinion.

The petition for a rehearing is denied.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on June 27, 1910. Beatty, C. J., dissented from the order denying such rehearing.