[Civ. No. 7234. First Appellate District, Division One.—May 27, 1930.]

C. H. RUSSELL et al., Respondents, v. CHARLES H. STILLWELL et al., Appellants.

Percy V. Hammon and J. E. Stillwell for Appellants.

Frank W. Wheeler, John H. Foley and John Dennison for Respondents.

THE COURT. — This is an action to recover fees for architects' services alleged to have been performed by respondents under a contract entered into by them with appellants to furnish plans, specifications, detailed drawings and superintendence of the building of a class "A" apartment house in the city of Long Beach. Judgment was entered in favor of plaintiffs for $43,950, and from such judgment defendants have appealed.

In April or May, 1923, the respondents were verbally employed by appellants to prepare preliminary sketches or working plans for the construction of the building in question, which they did. On October 1, 1923, the architects prepared and submitted to the owners a standard form of architect's contract, which so far as is necessary to a consideration of the questions here presented is as follows: "For a compensation to the architects of five (5%) per cent of the cost of the building, the architects, Russell & Alpaugh, agree to furnish promotion drawings, consisting of typical floor plan, first floor, basement and perspective drawings, and to furnish preliminary sketches, contract working drawings, and specifications, detail working drawings, and to furnish General Superintendence and to audit all accounts for the erection of a Class 'A' Apartment building. . . . Terms of payment to be as follows: ¾% upon acceptance of preliminary plan. ¾% when working plans are one-half complete. 1% when working plans and specifications are com-

plete. 2½% to be made to the architects as the building progresses in proportion to the cost of the work executed. It is further understood and agreed that the architects will proceed with the above contract and accept payments as follows: One thousand ($1000) dollars on or before one week after the execution of this contract and the sum of one thousand dollars ($1000) each and every week thereafter until a total of twelve thousand ($12000) has been paid by the Owners to the Architects. . . . The amount of the Architect's compensation is to be reckoned upon the total cost of the building, including all stationary fixtures." The contract not being satisfactory to appellants, the following addendum was added: "It is further understood and agreed that in case a satisfactory bond issue and financing cannot be arranged after the termination of the twelve weekly payments and the completion of the plans, we can pay the balance of the payments at the rate of five hundred dollars per week until the total of twenty-five thousand has been paid, which shall be liquidated damages. Also, Russell and Alpaugh shall each take two single apartments at the present rates as final payment of architects fees. A blue print for each apartment shall be furnished without additional cost if required and sufficient blue prints for salesmen or promotion."

Numerous objections are urged as to findings not being supported by the evidence, but if there is merit in the points made by appellants that the court erred in finding that defendants had stipulated that the contract sued upon was ambiguous and required oral testimony to interpret and explain, it erred in admitting and considering parol evidence to vary the terms of the written contract, and finding the contract entirely different from the written contract set up in plaintiff's complaint, the case is disposed of, and discussion of objections to other findings becomes unimportant.

It will be observed that in the contract the payment of the five per cent commission is divided into four classes—'¾% upon acceptance of preliminary plan; ¾% when working plans are one-half complete; 1% when working plans and specifications are complete; 2½% to be made to the architects as the building progresses in proportion to the cost of the work executed.'' When the contract was presented to appellant Charles H. Stillwell he stated, according

to the testimony of respondent Russell: " '$25,000.00 is all I want to gamble.' We said 'all right,' so I dictated that clause myself, and we put it in and it was signed under that arrangement.'' The addendum, which was then signed with the contract as one instrument, contains the provision: ''It is further agreed that in case a satisfactory bond issue cannot be arranged *after the completion of the plans,* we can pay the balance . . . until the total of twenty-five thousand has been paid which shall be liquidated damages.''

We can see but one construction that can be placed upon the words in the added clause ''the completion of the plans,'' and that is *all plans* before mentioned in the contract—not merely preliminary plans. The words themselves require no explanation. If they did it could be found in the contract itself. In the absence of fraud, where the parties have reduced to writing what appears to be a complete and certain agreement, parol evidence will not be permitted for the purpose of varying the written contract.

Section 1647 of the Civil Code and section 1860 of the Code of Civil Procedure simply enact the common-law rule, and it is not within their contemplation that a contract reduced to writing and executed shall have anything added to it nor taken away from it by evidence of surrounding circumstances; the rule is only employed where upon the face of the contract itself there is doubt, and the evidence is used to dispel this doubt (*United Iron Works* v. *Outer Harbor Dock & Wharf Co.,* 168 Cal. 81 [141 Pac. 917]). Respondents do not controvert this rule, but rely for support of the court's finding on the ground that the contract is ambiguous because it is so stipulated by the parties, basing their claim in this respect on the following: ''The Court: Do you claim the contract is ambiguous? Mr. Hammon: No. The Court: Then all the conversations are embodied in the contract, are they not? Mr. Hammon: Under section 1860 of the Code of·Civil Procedure we are permitted to show the circumstances. The Court: You are permitted, provided you allege ·the contract is ambiguous. Mr. Wheeler: We agree that it is ambiguous and have no objection. The Court: That settles it. There is no allegation in the pleadings of that character.'' And during the examination of respondent Russell by his counsel appears the following: ''Q. Then do I understand that I may offer these

three layouts or preliminary sketches of that building 100 by 100 feet? I would like to have them admitted in evidence by way of illustration. The Court: What was the objection? Mr. Hammon: Objected to on the ground they are irrelevant and immaterial. There is no issue on that point in the pleadings. Mr. Wheeler: They serve the purpose of explaining. How is the court to arrive at when we are entitled to $25,000.00 and when we are entitled to $80,000.00? We are to do one lot of work for $25,000.00, and we are to do a totally different work for $80,000.00, and we cannot explain the difference without introducing these plans in their periodic contractual relationship. That is why I say this contract is ambiguous; that it applies to one subdivision of these plans only, not to all of them. The Court: Sustained under the pleadings.''

From the foregoing, which is all that is called to our attention by either of the parties, we do not see any justification for the claim that appellants stipulated that the contract is ambiguous. It is true that the parties when testifying were asked questions relative to conversations at the time of the execution of the contract, and no further objections were made. ▇ This, however, would not support the finding that the contract is ambiguous, as whether or not a written contract may be varied by parol is a question of substantive law, and parol evidence would neither be admissible to vary the contract nor, if admitted without objection, be sufficient to support a finding which is in conflict with or which in any manner varies the original written contract which the parties entered into (*Dollar* v. *International Banking Corp.*, 13 Cal. App. 331, 343 [109 Pac. 499]).

▇ Respondents urge that as appellants represented to them in the early part of November, 1923, that they had their financing all arranged; represented to the commissioner of corporations that they had already expended $115,000, which included $65,000 architects' fees, though not actually paid out, but assumed by the Stillwells personally to secure a permit to issue bonds on the building; that the Vaughn Construction Company, to whom Stillwell Long Beach Company—owned by appellants—and to whom appellants had transferred title to the property for the purpose of financing the building, had been given the contract to erect the structure, and that as respondents relied upon these statements

and circumstances and performed or were ready and willing to perform all the conditions of the contract, that "such statements and representations raise an equitable estoppel against appellants." This argument may be answered by the fact that respondents in their complaint rely upon and plead the written contract and in no way plead the doctrine of estoppel. It seems to be firmly settled as a general rule in this state—to which the situation here presented is no exception—that a party who has an opportunity to plead an estoppel upon which his cause of action or defense depends must do so (10 Cal. Jur. 654, sec. 30, and cases cited).

Appellants being unable to finance the building beyond constructing it to the first floor, the work of construction stopped, and appellants transferred their stock in the corporation and their equity in the property to W. C. Fertig in trust to take care of the apartment house buyers. Some time later the building, different in design and eliminating about a third of the original plans and cutting off two stories, was erected by others under a set of plans prepared by Fisher, Lake & Traver. It is apparent, no matter what appellants told respondents as to their having arranged to finance the construction of the building, that "a satisfactory bond issue and financing" could not be arranged by them as provided in the addendum contract, and that therefore respondents were only entitled to the $25,000 fee provided therein for the "completion of the plans."

While there is no cause of action alleged for the recovery of the reasonable value of the services rendered by respondents in superintending the construction of the building from some time in February, 1924, until the work ceased in the months of May or June following, appellants have stipulated that "although plaintiffs in the present action might be limited to $25,000 less $23,000 paid for their services, defendants waive that question and consent that this court may on modification of judgment add $1,500 to the $2,000 unpaid on the contract."

There being no controversy as to the amount due, if respondents are held to a recovery of only $25,000 as provided in the addendum to the contract—that is, that appellants have paid to respondents $23,000—and would be entitled to but $2,000, and appellants stipulating that respondents may

be allowed $1,500 for services rendered in superintending construction of the building up to the time the work of construction ceased, the judgment will be modified by reducing it to the sum of $3,500, and as so modified will stand affirmed.